UNITED STATES of America,
Plaintiff–Appellee,

v.

Kenneth RANDALL,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Sheba RICE and Anthony C. Lybretti,
Jr., Defendants–Appellants.

Nos. 88–3648, 88–3649.

United States Court of Appeals,
Fifth Circuit.

Oct. 30, 1989.

—

Bruce C. Ashley, New Orleans, La. (court-appointed), for Randall.

Walter Becker, Robert J. Boitmann, Asst. U.S. Attys., John P. Volz, U.S. Atty., New Orleans, La., for U.S.

Archie B. Creech, New Orleans, La., for Rice.

Frank G. DeSalvo, New Orleans, La., for Lybretti.

Before GEE, JONES, Circuit Judges, and HUNTER,* District Judge:

GEE, Circuit Judge:

This consolidated appeal attacks, on various grounds, the defendants' convictions in the district court on drug trafficking charges. Defendant Randall appeals his conviction and sentence by alleging that the district court erred regarding (i) the admissibility and sufficiency of the evidence used against him, (ii) the denial of his motion for mistrial (by which defendant alleges the court abused its discretion), and (iii) by failing to find exceptional circumstances warranting a departure from the Sentencing Guidelines. Defendants Rice and Lybretti appeal the district court's denial of their motion to suppress evidence, alleging error in the court's findings of fact regarding the government's conduct in their arrests and the searches and seizures executed in the immediate aftermath of the offenses. For the reasons set forth below, we hold that none of defendants' challenges reveals error in the disposition of the district court and that, consequently, that decision must be affirmed.

* District Judge of the Western District of Louisi-

*Facts*

In May of 1988, a confidential informant negotiated by telephone with Randall for the purchase of two kilograms of cocaine. Drug enforcement agents monitored and taped the transaction. Randall told the informant that he would arrive in Slidell, Louisiana on May 11, 1988, accompanied by his drug source who had the cocaine. On that day, Randall checked into the Holiday Inn in Slidell along with Rice and Lybretti. Agents observed all three converse with each other and otherwise behave as if together. Randall checked into room 205 and Rice and Lybretti checked into room 223.

Special agent Robert Breard of the Drug Enforcement Administration sent the informant to meet Randall in room 205. During the meeting, Randall refused to show the cocaine to the informant, demanding that the informant "front" the money. The informant left the room, but the agents sent him back in to demand to see the cocaine. Randall agreed, and the surveillance team saw him leave the room and enter room 223 with a brown travel bag. Rice and Lybretti had entered and remained in room 223. Randall returned to room 205 with the bag and displayed two taped wrapped packages of cocaine to the informant. The informant then departed, and the surveillance team saw Randall first enter the room occupied by Rice and Lybretti and next return to his own room.

During the course of the day, the surveillance team observed that Lybretti would occasionally leave his room to "quickly and nervously scan the parking lot." The confidential informant advised agent Breard that during the previous meetings in Randall's room, Randall had stated that he was accompanied by two other persons. Randall explained that one individual was extremely nervous, was "paranoid" about being arrested by the D.E.A., was in possession of a firearm, and was very anxious to complete the transaction and depart.

After the confidential informant had related all of his conversations and observations to the agents, the team moved in to secure the two rooms pending applications

ana, sitting by designation.

for search warrants. As they approached room 223, agents saw the door open and Rice stand in the threshold. They entered the room, identified themselves and announced their purpose. Lybretti was standing next to the bed. The agents seated the suspects on the bed to ensure that they could be safely watched and could not reach for weapons or contraband. Before seating them, Agent Breard removed the bedspread to check for weapons and observed two tape wrapped items that he recognized immediately as kilogram packages of cocaine. These were seized and inspected.

The agents entered room 205 and discovered Randall ingesting a quantity of cocaine. A search revealed more cocaine on his person or in some nearby clothing. Agents also removed a firearm from Randall's person. Randall raises several other issues on appeal relating to the conduct of his trial, which are not relevant to the appeals of Rice and Lybretti. The facts surrounding these matters will be detailed in our discussion of those issues.

### Proceedings Below

Defendants Randall, Rice and Lybretti were each indicted in May 1988 on one count of conspiracy to possess with intent to distribute approximately two kilograms of cocaine hydrochloride in violation of 21 U.S.C. sections 841(a)(1) and 846, and on one count of possession with intent to distribute approximately two kilograms of cocaine hydrochloride in violation of 21 U.S.C. section 841(a)(1) and 18 U.S.C. section 2. The next month, a superseding indictment was returned against the defendants which added one additional count against Kenneth Randall. In the superseding indictment, Randall was charged with violation of 18 U.S.C. sections 2 and 924(c)(1) relative to carrying firearms in relation to a drug trafficking crime.

Randall filed a motion to suppress evidence, which the magistrate allowed defendants Rice and Lybretti to adopt. Based on several findings of fact, however, the magistrate denied the motion. All three defendants filed a motion for review of the magistrate's proposed findings and recommendations. The district judge heard arguments from both sides and made a de novo ruling denying the motion to suppress and adopting the finding of the magistrate.

At trial, the jury found Randall guilty as charged, and he was sentenced to 78 months imprisonment plus four years supervised release on both count one and two, the sentences to run concurrently. On count three, Randall was sentenced to sixty months imprisonment plus the three years supervised release, to run consecutively to the sentence on counts one and two. About this time, defendants Rice and Lybretti each pled guilty to one count of the superseding indictment. As part of their plea agreements, these defendants reserved a right to appeal the trial court's ruling on their motion to suppress. Rice was sentenced to 24 months imprisonment with 3 years supervised release; Lybretti to 85 months imprisonment and 3 years supervised release. All defendants appeal.

### Discussion

### Defendant Randall

Randall first contends that the two kilograms of cocaine and the firearm should have been suppressed because they were seized after the agents had entered rooms 205 and 223 without sufficient justification. He maintains that there was no probable cause to believe that two kilograms of cocaine could be found in his room, further contending that there was no sufficient showing by the government of "exigent circumstances" justifying a warrantless entry into and search of room 223. Finally, he asserts that the seizure of evidence from the rooms of Randall, Rice and Lybretti cannot be upheld as part of a search incident to a lawful arrest.

We have long pitched the standard of review for a motion to suppress based on live testimony at a suppression hearing at a high level. "[T]he trial court's purely factual findings must be accepted unless clearly erroneous, or influenced by an incorrect view of the law." *United States v. Maldonado,* 735 F.2d 809, 814 (5th Cir.1984). The initial question faced by the trial court

is whether the agents had probable cause to arrest the defendants. "Probable cause to arrest exists 'where the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that 'an offense has been or is being committed.'" *Passman v. Blackburn*, 652 F.2d 559, 564 (5th Cir.1981) *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1722, 72 L.Ed.2d 141 (1982), quoting *Draper v. United States*, 358 U.S. 307, 313; 79 S.Ct. 329, 333; 3 L.Ed.2d 327 (1959).

■ The requisite probable cause to arrest was indubitably present here. The agents received information from a reliable informant that he had arranged a drug buy from Randall and that Randall would be travelling with his drug source, arriving in Slidell on a specific date and checking into the Holiday Inn. These negotiations were recorded. Motel employees corroborated this information by informing the agents that Randall and his two companions had checked into the hotel on that date, in rooms not far from each other. The agents further investigated the matter by sending the informant in to meet with Randall, learning from the informant of the ensuing negotiations. Most damning to Randall's argument are his own admissions to the informant. Randall explained to the informant that he was accompanied by two other individuals and that one was exceedingly nervous, "paranoid" about being arrested by the D.E.A., in possession of a firearm, and anxious to complete the transaction and depart. The agents observed that the defendants were acting together and that Lybretti would nervously scan the parking lot. Consequently, the magistrate properly found that there was probable cause to believe that a cocaine transaction was about to occur based on reliable information from the informant corroborated by surveillance by agents on the scene.

Randall next complains that even assuming that there was probable cause to enter the motel rooms, there were no exigent circumstances to excuse the warrantless search and arrest. We have recognized that the possibility that evidence will be destroyed is a sufficient exigency to justify an entry without a warrant or a warrantless search. *United States v. Gardner*, 553 F.2d 946 (5th Cir.) *cert. denied*, 434 U.S. 1011, 98 S.Ct. 722, 54 L.Ed.2d 753 (1977); *United States v. Thompson*, 700 F.2d 944, 948 (5th Cir.), *aff'd* 720 F.2d 385 (5th Cir.1983). In *Gardner*, the search was upheld because of the possibility that the suspects might destroy the evidence after having spotted government surveillance. Randall argues that the agents never considered whether they were faced with a "now or never situation", but rather searched the rooms solely because of the presence of contraband in room 205. Moreover, Randall maintains that the government created its own exigency by failing to consider the possibility that Randall might want to see the money before turning over the cocaine and ignoring the possibility that warrants may be necessary during a lengthy investigation.

■ Again, his admissions to the informant defeat Randall's contention that exigent circumstances existed, if at all, only because the government created them. Randall told the informant that his source was exceedingly nervous, "paranoid" about possible D.E.A. arrest, armed, and anxious to complete the transaction and depart—the litany that we have recited before. The fact that Lybretti was paranoid and nervous was confirmed by surveillance. This raised the possibility that Lybretti may have spotted government surveillance, as he was anxiously and repeatedly scanning the parking lot. The agents knew the suspects were close to the cocaine and could easily destroy it, Randall having taken it to room 223 where Rice and Lybretti were ensconced. Randall's showing of the cocaine and his demand to the informant to get the purchase money created the "now or never" situation. Any delay could have meant destruction of the evidence, danger to persons in the vicinity, or flight from the scene. Delay in obtaining a warrant could have alerted the suspects or allowed them to detect surveillance. The magistrate correctly concluded that sufficient exigent cir-

cumstances existed here to justify the warrantless entry by agents into room 223.

Randall relies on our decision in *United States v. Munoz–Guerra*, for the assertion that "... without reason to believe that a criminal suspect was aware of police surveillance, the mere presence of firearms or destructible incriminating evidence does not create exigent circumstances." 788 F.2d 295, 298 (5th Cir.1986). That case is distinguishable from that at bar on two crucial facts: First, in *Munoz–Guerra* there was no reason to believe that the suspects had detected the D.E.A. surveillance or were imminently likely to do so. Defendant Lybretti's behavior demonstrates that this danger was very real in the case before us today. Second, there was no added circumstance where a seller/target had demanded money from the informant/purchaser and would expect its delivery within a short time.

■ Finally it is also clear that the evidence located in room 223 was seized as part of a search incident to lawful arrests, as the magistrate found. When a lawful arrest is made based on probable cause, the officer may search the subject's person to discover and remove weapons and to seize evidence to prevent its concealment or destruction. The officer may also search the area "within the immediate control" of the arrested person, meaning the area from which he might gain possession of a weapon or destructible evidence. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 89 S.Ct. 2034, 23 L.Ed.2d 685 *rehg. denied*, 396 U.S. 869, 90 S.Ct. 36, 24 L.Ed.2d 124 (1969). Since the agents had probable cause to arrest Rice and Lybretti, they had the right to search their persons and the area within their immediate control. Lybretti was standing near the bed when agents entered the room. The agents swept the area around him including the bed, where the cocaine was discovered under the bedspread.

[4] Our reasoning regarding the evidence recovered in room 223 applies with equal force to Randall's claim that the district court erred in concluding that the weapon and cocaine seized in room 205 were admissible as the product of a search incident to arrest or search under exigent circumstances. As is stated above, there was probable cause to effect an arrest of Randall, further corroborated by his being observed in the act of ingesting cocaine when agents entered room 205. The warrantless entry of room 205 was justified under the exigent circumstances that we have determined to have existed. The search of Randall's person for weapons or destructible evidence was permissible as an incident to his lawful arrest. This led to the discovery of the firearm on his person and the cocaine he was "snorting," in addition to amounts found on him or in his trousers hanging in the room.

■ Randall next attacks the sufficiency of the evidence to support the jury's findings that Randall was guilty of conspiracy to possess cocaine with intent to distribute it. In reviewing such findings, we are limited to inquiring whether a reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt. *United States v. Bell*, 678 F.2d 547, 549 (5th Cir.1982) (en banc) *aff'd* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). Count I charged that all the defendants had conspired to commit the offense denounced by 21 U.S.C. section 841(a)(1): knowingly or intentionally to distribute a controlled substance or to possess with intent to distribute a controlled substance, in this case cocaine hydrochloride. Randall argues that there could be no conspiracy because there was no evidence that anyone other than he was involved in the sale. This argument cannot withstand the overwhelming evidence of conspiracy that Randall himself supplied to the informant. In the taped conversations with the informant, Randall refers to having negotiated with his drug source about the price. Randall also stated that the source would travel to Slidell with him and stay in a separate hotel room. Randall further told the informant that the cocaine was being kept in another room by two other individuals, later discovered to be Rice and Lybretti. Without restating all of the evidence presented by the government, it is clear

that the jury appropriately found Randall guilty of conspiracy to possess cocaine with intent to distribute it.

■ Randall next assails the sufficiency of the evidence to support the jury's finding that he was in active or constructive possession of the cocaine in room 223. Randall was convicted on a second count in the indictment for possession with intent to distribute cocaine, in violation of 21 U.S.C. section 841(a)(1) and 18 U.S.C. section 2. Under 841(a)(1), the government must prove either actual or constructive possession. Randall contends that, although only a small amount of cocaine was found on his person, he was found guilty of possession with intent to distribute two kilograms. These two kilograms were found in room 223. As Randall maintains, the government must prove Randall's constructive possession of that cocaine. Actual possession is defined as knowingly having direct physical control over a thing at a given time. Randall asserts that to connect him with the cocaine found in room 223, it must be assumed that the cocaine the informant saw in the bag in room 205 was the same cocaine later found in room 223. The informant saw two kilos of cocaine that were displayed to him out of a bag by Randall. Surveillance agents saw Randall travel with a bag to room 205 during these negotiations. The government sufficiently established actual possession of the cocaine on Randall's part.

■ Randall further contends that the evidence was insufficient to support the jury's finding that he was guilty of carrying a firearm in relation to a drug trafficking crime. To establish the offense, the government must prove beyond a reasonable doubt that Randall committed a drug trafficking crime and that, during and in relation to that crime, he knowingly and intentionally used or carried a firearm. It is sufficient that the firearm be within the possession or control of a person who commits a drug trafficking offense, and that the circumstances indicate that the firearm "... facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or dis-

charge the weapon to protect himself or intimidate others ..." Such display or discharge need not actually occur. *United States v. Stewart*, 779 F.2d 538, 540 (9th Cir.1985); *cert. denied*, 484 U.S. 867, 108 S.Ct. 192, 98 L.Ed.2d 144 (1987). When Randall was arrested, he had just instructed the informant to get the money and return. Agents found that he had armed himself with a fully loaded .25 caliber automatic revolver which had been secreted in his back pocket. Randall could only have armed himself at this time in order to display or discharge the weapon to protect himself or to intimidate the informant. This ground of Randall's appeal is therefore meritless.

■ Randall's next ground of attack alleges abuse of discretion by the district court when it admitted evidence of defendant's involvement in other crimes. Randall complains that during the trial the jury heard tapes of telephone conversations between Randall and the informant which refer to other crimes engaged in by Randall. Don Conner, a witness for the prosecution, also indicated possible other crimes committed by Randall. Randall refers specifically to inferences of marijuana dealing and connections to other drug sources. Randall asserts that this evidence was not relevant to any issue other than defendant's character, was devoid of any probative value, and was prejudicial. Such evidence that is not "extrinsic", but rather inextricably intertwined with the evidence used to prove the crime charged, is admissible so that the jury may evaluate all of the circumstances under which the defendant acted. *United States v. Sepulveda*, 710 F.2d 188, 189 (5th Cir.1983). It also may be admissible to show the defendant's intent. *United States v. Simpson*, 709 F.2d 903, 907 (5th Cir.), *cert. denied*, 464 U.S. 942, 104 S.Ct. 360, 78 L.Ed.2d 322 (1983).

Such evidence may also be properly admitted under Rule 404(b) "... as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." We hold that Judge Wicker's cautionary instructions to the jury on other crimes evidence sufficed to cure

any possibility of remaining prejudice resulting from such admissions.

■ Next, Randall contends that the district court's denial of a motion for a mistrial based on the government's failure to reveal impeachment material relevant to their informant constituted an abuse of discretion. Randall argues that he was denied due process by the failure of the government to reveal the confidential informant's cocaine addiction. Randall's defense attorney submitted a motion for production of all "Brady material", (material evidence favorable to accused that has been suppressed, *Brady v. State of Maryland*, 373 U.S. 83, 87; 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963)), yet the government failed to disclose the information. The requested information was brought out by the government on its direct examination of informant, Gary Durnin. The government concedes that such information was not disclosed until trial yet maintains that since it was disclosed at such a time, one when it could be used by the defense, Randall's due process rights were not violated. On the first day of trial, evidence of the addiction was discovered. Defendant was permitted to cross-examine Gary Durnin on the matter the following day. Further, the government contends that it did not withhold the evidence but only became aware of it two days before trial. The failure of the government to produce such information does not rise to the level of a due process violation here because Randall had ample time to cross-examine Durnin on his drug use and did so.

■ Randall next questions whether the district court's denial of a motion for mistrial based on the prosecutor's statement that opposing counsel was "making a mountain out of a molehill" constituted an abuse of discretion in light of subsequent cautionary instructions. During the second day of trial, defense counsel objected repeatedly to the testimony of Officer Rob Maddalozzo. In response to these objections Assistant U.S. Attorney Constantine Georges argued to the trial court in this manner:

Your Honor, the issue is very simple and Mr. Ashley wants to make a mountain out of a molehill. The issue is very simple.

Defense counsel objected and moved for a mistrial which was denied. The district court judge then issued a cautionary instruction to the jury to disregard extraneous statements made by counsel and stated that such comments are not evidence. At the end of the trial, the judge gave another cautionary instruction on extraneous statements, objections, or arguments by attorneys. Randall asserts that the prosecutorial comment was highly prejudicial because it told the jury that Randall's defense was insignificant and unimportant. Even if we were to find that these comments constituted error, under the test set forth by this court in *United States v. McPhee*, 731 F.2d 1150 (5th Cir.1984), they do not constitute reversible error. First, the prejudicial effect of such a comment was trivial; second, the two cautionary instructions would easily cure any remaining prejudicial effect; and third, the evidence of Randall's guilt was overwhelming.

■ Randall also alleges that the district court's denial of a mistrial based on a comment by the court on defense counsel's question constituted an abuse of discretion.

On the second day of trial the following exchange occurred:

Mr. Ashley: Sir, are you telling this jury that's the same bag because it's presented to you in the court room and you don't see another bag in here?

The Court: That's not what he said, Mr. Ashley.

The judge immediately gave a cautionary instruction that comments by the court should be disregarded and repeated the same instructions at the close of the evidence. Randall asserts that the court's remark seriously prejudiced his defense. Randall's argument has no merit. The judge commented only after defense counsel misstated the testimony of the witness and, thus, her comment served to clarify the evidence that had just been presented.

■ Randall next alleges error in the district court's finding that the defendant

was not entitled to a departure from the Sentencing Guidelines for exceptional circumstances. Randall's sole argument for a departure from the Sentencing Guidelines lies in the fact that circumstantial evidence was used to convict him and that such evidence was inadequate and defective. Randall's argument is totally unfounded. No exceptional circumstances operated in Randall's favor. In fact, evidence of his guilt was overwhelming. Consequently, the trial judge's decision that defendant was not entitled to a departure from the Sentencing Guidelines for "exceptional circumstances", cannot be deemed clearly erroneous.

### Defendants Rice and Lybretti

Defendants Rice and Lybretti contend that there was no probable cause to believe that they were involved in a narcotics transaction, as was claimed by Randall. A separate discussion of the probable cause that existed as to these two defendants alone is necessary, because a different set of factors must be considered.

■ Rice and Lybretti assert that the information supplied by the informant coupled with the on-site surveillance conducted by the D.E.A. were insufficient to establish probable cause as to them. We hold today that the following facts and circumstances known to the D.E.A. agents or of which they had reasonable trustworthy information sufficed to create the belief that an offense had been or was being committed. The informant stated he had arranged a "drug buy" from Kenneth Randall; he stated that Randall would be travelling with his drug source; that they would arrive on May 11, 1988 in Slidell, Louisiana, and check into the Holiday Inn. The motel employees told the agents that Rice and Lybretti had checked into the hotel with Randall on the agreed-upon date. The separate rooms were in close proximity to one another. When the informant demanded to see the cocaine, agents observed Randall entering Rice and Lybretti's room with the bag and then returning. The informant stated that Randall told him that he was accompanied by two other persons.

Randall described one of the individuals as being exceedingly nervous and "paranoid," which was confirmed by surveillance. All of these facts and circumstances served to establish probable cause to arrest Rice and Lybretti. The trial court's ruling on the motion to suppress therefore cannot be said to be clearly erroneous.

■ Rice and Lybretti next assert error in the district court's finding that there was probable cause to search the room of defendants Rice and Lybretti. Defendants contend that neither the informant nor the surveillance agents ever observed cocaine in their room, no. 223. The magistrate correctly found that the search of room 223 was proper. As is noted by the government in its brief, no search of this room actually took place; but rather, as agents were securing the room and conducting their *Chimel* search, they discovered the cocaine. The magistrate correctly reached this conclusion, which was adopted by the judge.

■ Rice and Lybretti further assert district court error in its finding that there were exigent circumstances which permitted the warrantless entry into the room of defendants Rice and Lybretti. For the most part, the same factors that were relevant to the exigent circumstances permitting the search of Randall's room apply here. Several other factors are especially significant in the Rice and Lybretti appeal. Randall told the informant that his cocaine source was nervous, "paranoid" about being arrested by the D.E.A., carrying a weapon, and anxious to complete the transaction and depart. As we noted earlier, this information, confirmed by surveillance, raised the possibility that government surveillance may have been detected. Agents knew Rice and Lybretti were in close proximity to the cocaine and could easily destroy it. A true "now or never" situation arose when Randall demanded the money and the rooms had to then be secured. The agents were aware that one of the individuals in Rice and Lybretti's room was already nervous and could have easily been alerted by any delay in obtaining a warrant.

Defendants' penultimate claim asserts error in the district court's finding that the cocaine was seized as part of a search incident to a lawful arrest. As we held on defendants' challenge to the court's finding of probable cause regarding the room search, the cocaine was discovered in a proper search incident to a lawful arrest under *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The agents here were searching the area within the immediate control of Rice and Lybretti for weapons pursuant to an arrest based on probable cause. This area included the bed, next to which Lybretti was standing when agents entered the room. The agents discovered the cocaine as they removed the bedspread.

■ Defendants' final challenge to the district court's findings disputes the court's conclusion that the cocaine was in "plain view". Again under *Chimel, supra,* an object that comes into view during a search incident to arrest that is appropriately limited in scope may be seized without a warrant. *See also Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Rice and Lybretti argue that the initial intrusion and search were illegal, and that consequently this seizure was also unjustified. Because of our holding that the initial entry and arrest were properly conducted, this contention too must fail.

For the foregoing reasons, the judgment of the district court was correct. It is

AFFIRMED.