UNITED STATES of America

v.

Maxwell ALLEN, Appellant.

UNITED STATES of America

v.

James CASEY, Appellant.

Nos. 91–3206, 91–3207.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 6, 1992.

Decided April 7, 1992.

Daniel E. Ellenbogen, Washington, D.C. (appointed by the court), with whom Robert E. Sanders (appointed by the court), was on the brief, for appellants in 91–3206 and 91–3207.

Kristan Peters–Hamlin, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, Thomas J. Tourish, Jr., and Erik Christian, Asst. U.S. Attys., were on the brief, for appellee in both cases.

Before MIKVA, Chief Judge, SILBERMAN and WILLIAMS, Circuit Judges.

Opinion for the Court filed Per Curiam.

PER CURIAM:

Maxwell Allen and James Casey appeal from their convictions on drug charges. They both challenge the search warrant that led to their arrests for lack of probable cause and staleness and the prosecutor's closing argument for its assertion that they were co-participants in a crack selling operation. Allen also contends that his conviction was not supported by sufficient evidence and that he was prejudiced by the introduction of "other crimes" evidence, while Casey claims that testimony regarding his alias was improperly admitted hearsay. We are unpersuaded by any of these arguments and so we affirm.

I.

After a confidential informant of well-established reliability told the Metropolitan Police that drugs were being sold from the house at 3487 Holmstead Place in northwest Washington, D.C., the police arranged for the informant to make a controlled buy of $20 of crack cocaine from an individual inside the house. The tip and the buy formed the basis for a search warrant obtained from the D.C. Superior Court on January 25, 1991, less than 72 hours after the buy.

On the evening of February 4, two undercover officers made another purchase of a $20 rock of crack in the hallway of the house. The seller was a man they later identified as James Casey; they saw Maxwell Allen standing nearby, observing the

transaction. Minutes later, a police team executed the search warrant. As the officers entered the house, they observed Allen run from a first floor bedroom towards the stairs to the basement, where he was caught. Drug paraphernalia and a number of money order receipts and other documents bearing Allen's name were found in the bedroom, along with a 3.9 gram chunk of crack in the pocket of a jacket that Allen admitted (after being apprised of his *Miranda* rights) was his. Four hundred dollars were found on Allen himself.

Casey was discovered in the basement, sitting on an unusable toilet in a dark bathroom. He blurted out, "I don't know anything about any drugs," but in the ceiling area above his head, the police found two large ziplock bags containing 94 smaller bags of crack rocks weighing a total of 9.5 grams. They also found $35 in loose currency, including the marked $20 bill the officers had used in the undercover buy just minutes earlier, and a wallet containing, among other things, an old dentist appointment card bearing the name "Whitcliff Rhoden."

Both men were convicted by a jury of possession of cocaine base (crack) with intent to distribute in violation of 21 U.S.C. § 841(a)(1); Casey was also convicted of distribution of cocaine base, another violation of § 841(a)(1). Pursuant to 21 U.S.C. § 841(b) and the sentencing guidelines, Allen was sentenced to 65 months of imprisonment and Casey to two concurrent terms of 78 months. They appeal.

## II.

■ Appellants argue that the informant's single purchase of a small rock of crack from an unknown individual in the hallway of the house at 3487 Holmstead did not constitute probable cause for issuance of a search warrant for the house, or, alternatively, that the facts supporting probable cause for an immediate search had become stale by the time the warrant was executed. We have, however, upheld even under the old *Aguilar–Spinelli* test a search warrant based on a reliable informant's tip about drug activity at a resi-

dence corroborated by a single controlled buy, *see United States v. Branch*, 545 F.2d 177, 179–80 (D.C.Cir.1976), and the facts here certainly established at least a "fair probability" that illegal narcotics would be found in the house, satisfying the current and more flexible test of *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). *See also United States v. Lamon*, 930 F.2d 1183, 1187–88 (7th Cir.1991). As for staleness, appellants do not allege that the warrant was executed outside the ten-day statutory period, *see* D.C.CODE ANN. § 23–523; FED.R.CRIM.P. 41(c)(1), and it was entirely reasonable for the police to assume that in the absence of interdiction, the house would continue to serve as a fixed and secure location for drug sales, *see United States v. Nocella*, 849 F.2d 33, 40 (1st Cir.1988)—an assumption proved correct by the undercover buy just a few minutes before the warrant was executed.

■ Allen no longer disputes his possession of the 3.9 grams of crack found in his jacket and has stipulated that this amount of crack is consistent with the specific intent to distribute. He claims, however, that there was insufficient evidence connecting him to the 9.5 grams of crack found with Casey in the basement bathroom and thus no basis for his conviction, which he says was for possession with intent to distribute more than five grams of cocaine base. The question of Allen's possession of the basement drugs was submitted, without objection by any party, to the jury as a special interrogatory, and we believe that the jury's finding that Allen constructively possessed the 9.5 grams as well as the 3.9 grams was supported by ample evidence in the record. The jury could quite legitimately have concluded beyond a reasonable doubt that Allen and Casey were co-participants in a crack selling operation and that Allen exercised constructive possession—knowing dominion and control—over the drugs found with Casey. *See United States v. Byfield*, 928 F.2d 1163, 1166 (D.C.Cir.1991). Among other things, Allen and Casey were close friends (Casey was godfather to one of

Allen's children); Allen possessed a large, uncut chunk of cocaine, cutting paraphernalia, money order receipts,[1] and $400, while Casey held bags of cut rocks and just a few dollars; and Allen had observed Casey's sale to the undercover officers of a rock from the cache later found in the basement.

■ In its brief on appeal, the government contends that Allen was properly convicted under 21 U.S.C. § 841(a)(1) if he possessed *any* detectable amount of cocaine base (which he now concedes he did) and that the total weight of the drugs with which he was associated was properly a question for the district judge at sentencing because § 841(b) is only a penalty provision, not an element of any substantive offense. The government is correct—the quantity issue should not have gone to the jury, *see United States v. Patrick*, 959 F.2d 991, 995–96, n. 5 (D.C.Cir.1992) (citing cases)—although we find it hard to understand why the government did not point this out to the district court in this case (and a number of others like it that we have recently seen).

By not raising this argument below, the government appears to have waived it. If it had been properly presented, the appropriate course for us might well be to remand Allen's case for resentencing based on an express finding of total drug weight by the district judge. *See United States v. Padilla*, 869 F.2d 372, 381 (8th Cir.) (remanding for district court finding where sufficiency of the evidence as to weight was dubious), *cert. denied*, 492 U.S. 909, 109 S.Ct. 3223, 106 L.Ed.2d 572 (1989). We think judicial economy would counsel against taking that step in this case, however. The jury's finding was well-supported, the district judge did not disturb it, and Allen did not challenge any factual findings at sentencing: the result of a remand would be preordained. Besides, the error of submitting the question to the jury placed a greater burden of proof on the government (the beyond a reasonable doubt standard rather than the preponderance of the evidence standard used in sentencing) and thus was not prejudicial to Allen. *See United States v. Barnes*, 890 F.2d 545, 551 n. 6 (1st Cir.1989), *cert. denied*, 494 U.S. 1019, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1990).

■ We also reject Allen's argument that testimony that he watched Casey sell crack to the undercover officers fell within the ban on "other crimes" evidence. *See* FED.R.EVID. 404(b). That testimony was plainly not admitted solely to demonstrate Allen's bad character. Instead, it was an intrinsic part of the witness' account of the circumstances surrounding the offense for which Allen was indicted (and also was relevant both to Allen's intent to distribute and his knowledge about Casey's drug cache). *See United States v. Perholtz*, 842 F.2d 343, 358 (D.C.Cir.) (per curiam), *cert. denied*, 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988). As many of our sister circuits have held, Rule 404(b) excludes only evidence "extrinsic" or "extraneous" to the crimes charged, not evidence that is "intrinsic" or "inextricably intertwined." *See, e.g., United States v. Roberts*, 933 F.2d 517, 520 (7th Cir.1991); *United States v. Foster*, 889 F.2d 1049, 1054 (11th Cir. 1989); *United States v. Randall*, 887 F.2d 1262, 1268 (5th Cir.1989); *United States v. Towne*, 870 F.2d 880, 886 (2d Cir.), *cert. denied*, 490 U.S. 1101, 109 S.Ct. 2456, 104 L.Ed.2d 1010 (1989); *see also* FED.R.EVID. 404(b) advisory committee's note on 1991 amendment (recognizing distinction between intrinsic and extrinsic evidence). Allen contends that the district court was still obligated to conduct a FED.R.EVID. 403 balancing on the record, but he did not request one and, even assuming (without deciding) that a Rule 403 balancing is required for admission of intrinsic other crimes evidence, we think it clear from the record that the testimony here was considerably more probative than prejudicial. *See United States v. Manner*, 887 F.2d 317, 322 (D.C.Cir.1989), *cert. denied*, 493 U.S. 1062, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990).

---

**1.** Allen argues that these and other documents were not disclosed to him before trial as required by FED.R.CRIM.P. 16(a)(1)(C), but he affirmatively waived this objection at trial.

■ The other appellant, Casey, claims that testimony that he was also known as "Witcliff Rhoden" was hearsay improperly admitted to connect him to the appointment card bearing that name found, along with the 9.5 grams of crack, in the bathroom ceiling. This is an interesting question. One virtually always learns a name—even one's own—by being told what it is. *See United States v. May*, 622 F.2d 1000, 1007 (9th Cir.), *cert. denied*, 449 U.S. 984, 101 S.Ct. 402, 66 L.Ed.2d 247 (1980). Nevertheless, evidence as to names is commonly regarded as either not hearsay because it is not introduced to prove the truth of the matter asserted, *see, e.g., Patrick*, at 997, or so imbued with reliability because of the name's common usage as to make any objection frivolous. *See* 2 J. WIGMORE, WIGMORE ON EVIDENCE § 667a, at 928 (J. Chadbourn rev. ed. 1979);[2] *cf. May*, 622 F.2d at 1007 ("[A] name, however learned, is not really testimonial. Rather, it is a bit of circumstantial evidence."). Names do not, however, fall squarely within any of the express exceptions to the federal hearsay rule. *But cf.* FED.R.EVID. 803(19) (hearsay exception for reputation concerning facts of personal or family history).

This may be one of the rare cases in which testimony regarding a name is hearsay—introduced to prove that James Casey does use the name Witcliff Rhoden—and is of disputable reliability. The record does not indicate the foundation for the testifying officers' knowledge of Casey's supposed alias, although it may well have been based on an admission by Casey, *see* FED.R.EVID. 801(d)(2), or some other specific hearsay exception, and there are indications (albeit not discussed at trial) that the testimony was reliable.[3] We need not resolve this issue, however, because even if

admission of the testimony regarding Casey's alias constituted error, it was undoubtedly harmless. Casey was found hiding alone in an unlit, unusable bathroom within a few feet of both a bag of drugs consistent in size and appearance with the bag he had in his waistband during the undercover buy just moments before and, even more damningly, the very $20 bill the police had given him during that buy. Compared to that, the testimony regarding his alias was trivial.

■ Finally, both appellants assert that the prosecutor argued prejudicial facts not in evidence during his rebuttal closing. They object to his statements that Allen was the "controller" and Casey the "runner" in a drug selling "operation." But it appears that the prosecutor was only suggesting quite reasonable inferences from the evidence in the record in order to rebut Allen's counsel's contention that there was no connection between Allen and the drugs found in the basement. *See, e.g., United States v. de Leon Davis*, 914 F.2d 340, 345 (1st Cir.1990) (argument "based primarily on conjecture, but not wild speculation," is permissible). That was not prosecutorial misconduct at all, much less the sort of exceptionally severe, uncured, and prejudicial misconduct required before we will reverse a conviction as plain error based on misstatements during closing argument. *See Perholtz*, 842 F.2d at 361.

\* \* \* \* \* \*

For the reasons stated, we affirm the convictions and sentences.

*It is so ordered.*

---

2. A person's *name* is the title by which he himself and others habitually call him. To know a person's name, therefore, is to have heard him so called by himself and by others. In strictness, such an utterance is not hearsay ..., except where it is made as an assertion of fact. But, though it may be hearsay, as a source of information, yet it is universally relied upon as a source of knowledge. Courts have commonly accepted testimony founded upon it.

*Id.* (citing cases).

3. For example, the D.C. Pretrial Services Agency Report lists Witcliff Rhoden as Casey's alias; the indictment charges "JAMES ROBERT CASEY, also known as Witcliff Rhoden"; the name was repeatedly used without objection by the prosecutor and Magistrate at the pretrial and detention hearing; and we are told that there is a D.C. Court of Appeals case with the caption "James Casey a/k/a Whitcliff Rhoden."