UNITED STATES of America, Appellee,

v.

Edward Adio BADRU, et al., Appellants.

Nos. 94–3163, 94-3178 and 94-3179.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 3, 1996.

Decided Oct. 4, 1996.

Gerald I. Fisher, appointed by the court, argued the cause, for Ishmeal Kolawole Badru. Elaine Lubin, Washington, DC, appointed by the court, argued the cause, for Edward Adio Badru. Sunanda K. Holmes, Silver Spring, MD, argued the cause, for Olutoyin O. Fashina. All were on the joint brief, for appellants. Mary E. Davis, appointed by the court, entered an appearance, for appellant Edward Badru.

Mary B. McCord, Assistant United States Attorney, argued the cause, for appellee, with whom Eric H. Holder, Jr., United States Attorney, John R. Fisher, Thomas J. Tourish, Jr. and Eileen C. Mayer, Assistant United States Attorneys, Washington, DC, were on the brief.

Before: EDWARDS, Chief Judge, ROGERS and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

In these appeals from convictions by a jury of conspiracy to distribute heroin and related offenses, appellants raise a host of issues, only a few of which require more than cursory discussion. Finding no basis for the reversal of their convictions or their sentences, we affirm.

## I.

Briefly summarized, the government's evidence showed that beginning in the fall of

1991, Ishmeal Badru was in the business of selling large quantities of pure heroin in the Washington metropolitan area. Assisting him were his brother, Edward Badru, and Olutoyin Fashina. The government's investigation began when an undercover agent was introduced to Ishmeal and began a series of contacts that involved audio and video taping of meetings and telephone conversations concerning the importation and sale of heroin. The undercover agent made a series of purchases of heroin beginning in November 1991 and continuing until January 1993. Through various contacts, the agent learned about appellants' scheme through April 1993 to smuggle heroin from Nigeria into the United States through Mexico. Appellants succeeded in importing heroin by recruiting couriers who carried the drugs inside specially made toiletry bags that appellants provided to them.

Ishmeal also informed the undercover agent that in his absence the agent should contact Edward, and the agent had several telephone conversations with Edward and purchased heroin from him. The evidence further showed that Fashina's car, apartment, and telephone were used in the distribution activities, and that he, along with Edward, recruited couriers, arranged for their local and overseas transportation and passports, and retrieved their luggage upon their return to the United States. Edward was arrested in January 1993, when state police stopped the car he was driving and found 351.1 grams of heroin during a search of the car.

Eventually, in the spring of 1993, several of the recruited couriers were arrested upon returning from a trip to Nigeria as they crossed from Mexico into the United States near San Diego, California. Inside the couriers' luggage, customs agents found 5,569 grams of heroin, ranging in purity from 69% to 90%. The couriers agreed to cooperate with the government, and as a result, a controlled delivery was made on April 12, 1993, to Ishmeal's wife at her Maryland apartment.

In a search of the apartment, agents found evidence linking appellants to the distribution conspiracy, including bank records, a Nigerian passport, and various documents bearing the names of the couriers and the Badrus. Ishmeal was arrested on October 11, 1993, in a van driven by Fashina, who was himself arrested on December 15, 1993.

In January, 1994, the government indicted appellants for conspiracy to distribute and possess with intent to distribute more than 100 grams of heroin, 21 U.S.C. § 846; numerous individual counts of distribution of heroin, *id.* § 841(a)(1), (b)(1)(B)(i), (b)(1)(C); distribution of heroin within 1,000 feet of a school, *id.* § 860(a); and possession with intent to distribute 100 grams or more of heroin, *id.* § 841(a)(1), (b)(1)(B)(i). A jury found Ishmeal Badru guilty of the conspiracy and six of the substantive heroin trafficking counts; Edward Badru guilty of the conspiracy and four substantive heroin trafficking counts; and Fashina guilty of the conspiracy and two substantive heroin trafficking counts. The district court ordered Ishmeal and Edward to forfeit the proceeds from their activities, and sentenced Ishmeal to 960 months imprisonment and eight years supervised release, Edward to 262 months imprisonment and five years supervised release, and Fashina to 240 months imprisonment and four years supervised release.

## II.

■ Appellants contend that the district court erred in allowing the government to introduce evidence of their involvement in smuggling heroin from Nigeria into the United States through couriers in 1992 and early 1993. They maintain that this evidence should have been excluded as extrinsic evidence of prior bad acts under Rule 404(b) of the Federal Rules of Evidence.[1] Because we conclude that this evidence was intrinsic to the charged offenses and therefore not with-

---

1. Rule 404(b) provides, in relevant part:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . . .
 FED. R. EVID. 404(b).

in the proscription of Rule 404(b), this contention is ultimately unpersuasive.

At trial, the government offered evidence relating to the couriers' trips to Nigeria as direct, relevant evidence of the conspiracy to distribute heroin. The government maintained that three separate trips in June, September, and December 1992 coincided with occasions when Ishmeal and Edward Badru indicated to the undercover agent that they had new heroin to sell, and that the April 1993 seizure of 5,569 grams of heroin from the couriers constituted direct evidence of the charged offenses. Alternatively, the government argued that the evidence of the smuggling operations was admissible under Rule 404(b). The district court deferred ruling on the admissibility of the evidence until the government had presented some of its evidence at trial. Over defense objection, the district court subsequently ruled that the evidence was relevant. In the district court's words, the government was "trying to demonstrate that this was a part of the conspiracy to distribute. The only way I can distribute heroin is to get heroin." The court rejected defense arguments that the smuggling evidence was unnecessary, prejudicial, confusing, and speculative because the government could not prove that heroin was smuggled on the three trips to Nigeria prior to April 1993. The court concluded that the government had proffered circumstantial evidence that the 1992 trips involved heroin. Although the court indicated willingness to entertain argument again if the evidence became unduly prejudicial, appellants made no request for a formal balancing under Federal Rule of Evidence 403. The court also denied a mid-trial request for a limiting instruction with respect to "other crimes" evidence, on the ground that the evidence was not admitted as Rule 404(b) evidence, but instead was "just coming in as part of the case."

In *United States v. Allen*, 960 F.2d 1055 (D.C.Cir.), *cert. denied*, 506 U.S. 881, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992), the court drew the distinction that is relevant here. In *Allen*, the district court admitted testimony that the defendant was observing his codefendant sell drugs to an undercover officer just minutes before the police executed a search warrant for the house where the charged sale was made. Rejecting the contention that the evidence fell within the ban on "other crimes" evidence under Rule 404(b), the court held that the testimony was "an intrinsic part of the witness' account of the circumstances surrounding the offense for which [the defendant] was indicted...." 960 F.2d at 1058. By contrast, Rule 404(b) excludes evidence that is "extrinsic" or "extraneous" to the crimes charged. *Id.* Similarly, in *United States v. Washington*, 12 F.3d 1128, 1134–35 (D.C.Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 98, 130 L.Ed.2d 47 (1994), the court upheld, as intrinsic to the possession with intent to distribute cocaine charge, the admission of evidence that the defendant, seen on the day of the crime holding his left arm, used an insurance card in someone else's name to obtain treatment for the arm the next day.

Other circuits have reached similar results. The Eleventh Circuit has explained that there exist several forms of "other crimes" evidence that are not considered extrinsic within the meaning of Rule 404(b):

> Evidence of criminal activity other than the charged offense is not considered extrinsic if it is an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, if it was inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime of trial....

*United States v. Weeks*, 716 F.2d 830, 832 (11th Cir.1983) (per curiam) (citations omitted). Likewise, in *United States v. Roberts*, 933 F.2d 517, 519–20 (7th Cir.1991), the Seventh Circuit held that testimony regarding the recovery of a gun that Roberts used in the armed robbery of a drug store was intrinsic to the charge of armed bank robbery occurring two days earlier. The same distinction between extrinsic and intrinsic evidence is reflected in *United States v. Randall*, 887 F.2d 1262, 1268 (5th Cir.1989), and *United States v. Towne*, 870 F.2d 880, 886 (2d Cir.), *cert. denied*, 490 U.S. 1101, 109 S.Ct. 2456, 104 L.Ed.2d 1010 (1989). As Professors Wright and Graham explain:

In cases where the incident offered is a part of the conspiracy alleged in the indictment, the evidence is admissible under Rule 404(b) because it is not an "other" crime. The evidence is offered as direct evidence of the fact in issue, not as circumstantial evidence requiring an inference as to the character of the accused.

22 CHARLES A. WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5239, at 450 (1978).

Consequently, appellants' contention that the evidence about the overseas smuggling trips constitutes "other bad acts" or "other crimes" evidence within the meaning of Rule 404(b) necessarily must fail. Pretermitting whether the evidence that there were overseas trips fell within the scope of "other bad acts" or "other crimes" evidence, the district court properly could conclude that the evidence was directly relevant to the charged offenses. As the district court noted, appellants had to obtain heroin from a source before they could distribute it. Given the similar modus operandi between the couriers' previous trips to Nigeria and the planning and execution of the trip that ended in April 1993 with the seizure of 5,569 grams of heroin from the couriers' luggage, a jury reasonably could find that appellants conducted the previous trips for the same purpose as the trip that ended in April 1993. Accordingly, we find no error by the district court in admitting evidence relating to the 1992 trips and by denying the requested limiting instruction. *See Towne,* 870 F.2d at 886.

### III.

Appellants' other contentions for reversal of their convictions are no more persuasive. Because they generally involve well-settled areas of law, we treat them summarily.

We find no abuse of discretion by the district court in refusing in the conduct of voir dire to include "close friends" in the *Ridley* [2] inquiry, inasmuch as the court posed a sufficient catch-all question to the jury to ensure biases were revealed after the court made general inquiries and put the *Ridley* question to the panel. *See United States v.*

*Moore,* 936 F.2d 1508, 1515 (7th Cir.), *cert. denied,* 502 U.S. 991, 112 S.Ct. 607, 116 L.Ed.2d 630 (1991); *see also United States v. Robinson,* 475 F.2d 376, 380 (D.C.Cir.1973). Nor do we find an abuse of discretion in the denial of Fashina's motion for a severance, in light of the district court's instruction that the jury must consider each of the nine counts separately as to each defendant, and the absence of clear disparity in the weight, quantity or type of evidence presented against Fashina relative to the evidence against the other defendants as would require a separate trial. *See Zafiro v. United States,* 506 U.S. 534, 539, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993); *see also United States v. Halliman,* 923 F.2d 873, 884 (D.C.Cir.1991); *United States v. Long,* 905 F.2d 1572, 1581 (D.C.Cir.), *cert. denied,* 498 U.S. 948, 111 S.Ct. 365, 112 L.Ed.2d 328 (1990); *United States v. Manner,* 887 F.2d 317, 324 (D.C.Cir.1989), *cert. denied,* 493 U.S. 1062, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990).

We also find no error by the district court in denying Edward Badru's motion to suppress evidence found in the car that he was driving on January 7, 1993. A police officer used a technique referred to as "Rolling No's," in which he posed a series of questions to Edward, each intended to elicit a negative response. The final question was, "You don't mind if we search your car, do you?", to which Edward answered, "no." The district court reasonably could conclude that the questions were not confusing to Edward and indicated clearly that the police were looking for drugs. Thus, the court could properly conclude that he consented to the search, as there was no evidence to suggest duress or that Edward was of low intelligence. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 248–49, 93 S.Ct. 2041, 2058–59, 36 L.Ed.2d 854 (1973); *United States v. Mason,* 966 F.2d 1488, 1493 (D.C.Cir.1992), *cert. denied,* 506 U.S. 1040, 113 S.Ct. 829, 121 L.Ed.2d 699 (1992); *United States v. Andrews,* 746 F.2d 247, 249–50 (5th Cir.1984), *cert. denied,* 471 U.S. 1021, 105 S.Ct. 2032, 85 L.Ed.2d 314 (1985).

---

**2.** *United States v. Ridley,* 412 F.2d 1126 (D.C.Cir.1969).

Likewise, we find no clear error in the district court's finding that there was no evidence of collusion, as distinct from intergovernmental cooperation between state and federal law enforcement officials, that would implicate Edward Badru's right to a speedy trial under 18 U.S.C. § 3161(b). *See United States v. Cepeda–Luna,* 989 F.2d 353, 356–58 (9th Cir.1993); *United States v. Mills,* 964 F.2d 1186, 1192 (D.C.Cir.) (en banc), *cert. denied,* 506 U.S. 977, 113 S.Ct. 471, 121 L.Ed.2d 378 (1992).

■ Moreover, because Ishmeal Badru's facial constitutional challenge to the "schoolyard statute," 21 U.S.C. § 860(a), as exceeding Congress' power to regulate interstate commerce, *see United States v. Lopez,* —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), is raised for the first time on appeal, it is barred by *United States v. Baucum,* 66 F.3d 362 (D.C.Cir.1995), *on reh'g,* 80 F.3d 539 (D.C.Cir.1996). Ishmeal's reliance on *United States v. McKie,* 73 F.3d 1149, 1154–55 (D.C.Cir.1996), is misplaced inasmuch as there has been no substantive interpretation of the constitutionality of the schoolyard statute as must be retroactively applied; nor has Ishmeal suggested cause and prejudice for his failure to raise the challenge in the district court. *See id.* at 1154.

## IV.

Turning to the sentencing challenges, appellants raise a series of objections to the district court's attributions of drug quantities to each of them. They challenge the application of the relevant conduct provision of the United States Sentencing Guidelines ("U.S.S.G.") § 1B1.3, various specific attributions of drug amounts, offense level increases for Edward Badru and Fashina because of their managerial roles, *id.* § 3B1.1(b), and the offense level increase for Ishmeal Badru for obstruction of justice, *id.* § 3C1.1.

## A.

■ In the case of jointly undertaken criminal activity, § 1B.1.3(a)(1)(B) (1994) of the Sentencing Guidelines provides that for purposes of determining the base level offense "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity" are to be taken into account. Where such conduct involves drug amounts, the quantities must be established by a preponderance of the evidence. *See United States v. Lam Kwong–Wah,* 966 F.2d 682, 685–86 (D.C.Cir.), *cert. denied,* 506 U.S. 901, 113 S.Ct. 287, 121 L.Ed.2d 213 (1992). The court has emphasized that, with regard to drug attributions based on a defendant's relevant conduct, the district court must make "'individualized findings . . . linking each appellant's scope of participation in the conspiracy with the quantum of drugs attributed to [him].'" *United States v. Childress,* 58 F.3d 693, 722 (D.C.Cir.1995) (quoting *United States v. Edmond,* 52 F.3d 1080, 1105 (D.C.Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 539, 133 L.Ed.2d 443 (1995)), *cert. denied,* —— U.S. ——, 116 S.Ct. 825, 133 L.Ed.2d 768 (1996).

The district court relied on the presentence reports, which set forth the government's evidence as to each appellant's involvement in the heroin distribution conspiracy and specific drug attributions by date. *See United States v. Pinnick,* 47 F.3d 434, 437 (D.C.Cir.1995); *United States v. Saro,* 24 F.3d 283, 291 (D.C.Cir.1994). Before adopting the attributions in the presentence report, however, the district court made specific findings as to appellants' conduct upon reviewing defense counsels' objections to the attributions in the presentence report and the government's evidence. *Cf. United States v. Graham,* 83 F.3d 1466, 1479–80 (D.C.Cir.1996) (remanding where district court relied on presentence report without making individualized findings). Because we find no merit to many of appellants' attribution challenges, we focus, as did appellants at oral argument, only on three challenged attributions.

■ First, appellants contend that the district court lacked an evidentiary foundation for finding that the amount of drugs brought into the United States by appellants' couriers in December 1992 was approximately the same as the amount they imported in April 1993. Note 12 to the comment to § 2D1.1 of

the Sentencing Guidelines states that "Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." U.S.S.G. § 2D1.1, comment (n.12) (1994). In approximating the amount, the court may consider, among other things, "similar transactions in controlled substances by the defendant. . . ." *Id.*

The evidence showed that in both the winter 1992 and spring 1993 trips, the couriers traveled to Nigeria for the purpose of bringing heroin into the United States. On both occasions, the heroin was secreted in two leather toiletry bags that Ishmeal Badru had provided. Edward Badru told the undercover agent in December 1992 that they had some "new stuff," and, according to the agent, the brick he saw in January 1993 was the same type of brick, with the same markings and packaging, that the agent had purchased from appellants in November 1992. The evidence also showed that Edward Badru and Fashina were involved in planning and executing the December 1992 and April 1993 trips, as well as other trips, recruiting the couriers, arranging for their passports, tickets, and travel money, taking them to the airport for departure and subsequently meeting the couriers at the airport upon their return from abroad, paying them, and retrieving their luggage containing the toiletry bags. The trips followed the same route from the United States to Nigeria and back into the United States through the Mexico–California border.

From the evidence of appellants' modus operandi, the district court reasonably could rely on the similarity of the luggage and the procedure for the December 1992 and April 1993 trips in finding that appellants imported approximately the same amount of heroin in December as was seized from the couriers in

April. *United States v. Jonsson,* 15 F.3d 759, 762–63 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 480, 130 L.Ed.2d 394 (1994). To conclude to the contrary would mean that the couriers had returned in December without drugs equal to the amount that could be secreted in the toiletry bags and yet were paid for their work and rehired for a later overseas trip the following spring, an improbable scenario on the evidence before the court. Therefore, given the evidence of their joint efforts to import heroin, the district court could attribute 5,217 grams to each appellant. The presentence report noted that the 5,217 grams represented what remained after deducting the grams seized when Edward was arrested in January 1993. The evidence before the district court demonstrated that this is not a case in which one of the appellants was a minor participant in the distribution conspiracy; rather, all three were directly involved in planning, facilitating, and executing the importation of heroin and its sale over an extended period of time. Although caution should be properly exercised in the attribution area, *United States v. Sepulveda,* 15 F.3d 1161, 1198 (1st Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2714, 129 L.Ed.2d 840 (1994), appellants fail to show clear error by the district court.[3]

■ Second, Ishmeal and Edward Badru contend that the district court lacked an evidentiary basis for concluding that Ishmeal's statement to the undercover agent that he had "gifts" for "2½ people" or for "[a]bout 200 people" in June 1992 was a reference to approximately 2000 grams of heroin. For reasons that are similar to those discussed in regard to the December 1992 attributions, we find no clear error by the district court. The evidence showed that the couriers returned from a June 1992 trip to Nigeria with only one toiletry bag, whereas

---

3. The cases on which appellants rely are distinguishable. For example, unlike *United States v. Shonubi,* 998 F.2d 84, 88–90 (2d Cir.1993), here there was corroborating testimony by the courier that the December 1992 and April 1993 trips were carried out in the same manner and involved the same toiletry bags and instructions, and testimony by the agent that Edward stated he had "new stuff" in December 1992. Likewise, in *United States v. Hewitt,* 942 F.2d 1270, 1274 (8th Cir.1991), there was neither evidence

of the dates of relevant drug deliveries nor evidence of the quantities of drugs delivered. Unlike the instant case, in *United States v. Zimmer,* 14 F.3d 286, 289–90 (6th Cir.1994), there was insufficient evidence to support prior attributions because there was no evidence that the defendant had engaged in growing 200 marijuana plants over an eight-year period prior to a raid of defendant's indoor operation in which 800 plants were seized.

the couriers used two toiletry bags in April 1993 that contained 5,569 grams of heroin. The district court's attribution of 2,000 grams based on Ishmeal's statement after the June 1992 importation that he had "gifts" was, therefore, a conservative estimate of the quantity of drugs fairly attributable to the Badru brothers. Other evidence indicated that Ishmeal previously had offered to sell heroin to the undercover agent in 100 gram parts. Nor is there clear error in the district court's acceptance of the presentence report's finding that this amount was reasonably foreseeable to Edward in view of his role in executing the trips to Nigeria.

 Third, Fashina contends that the district court failed to make any findings as to him regarding a 2,869.5 gram attribution on November 5, 1992. The attribution was based on Ishmeal Badru's sale of 349.5 grams of heroin to the undercover agent on November 5, as well as an additional 2,520 grams based on Ishmeal's statement in October 1992 to the agent that he had sold five bricks of heroin and had three or four left. Fashina contends that the attribution of these amounts is beyond the scope of his participation in the conspiracy. But he does not contend that the district court erred in failing to make individualized findings of his role in the conspiracy.

The district court, in fact, found that by virtue of the evidence that Fashina was part of the Badru brothers' importation and distribution scheme and that heroin with the same markings as previously seen by the agent was found in Fashina's apartment, the heroin that Ishmeal Badru stated he had sold and the heroin still available to be sold should be attributed to Fashina. The court noted that the heroin brick sold on November 5 was the same brick shown to the undercover agent at an October 21 meeting in Fashina's apartment with Fashina present. Fashina, along with Edward Badru, had been involved in execution of the trip to Nigeria a few months earlier. Under the law of this circuit, the acquittals of Edward and Fashina

of the November 5, 1991, sale are of no consequence with respect to the attribution of the drug amounts to them under the Sentencing Guidelines. *United States v. Boney,* 977 F.2d 624, 635 (D.C.Cir.1992).

Although the district court's finding regarding Fashina is brief, when viewed in context, it is more than simply a generalized or conclusory finding that Fashina was involved in the conspiracy.[4] The court's finding, referring to the evidence, immediately followed a recounting by the prosecutor of the evidence of Fashina's involvement in the conspiracy from October 1992 through April 1993. This included references to the couriers' testimony about Fashina's involvement in their recruitment, arrangements for their overseas trips in December and April, and taking their luggage upon their return, as well as other testimony that Ishmeal kept the drugs at Fashina's apartment, that Edward used Fashina's car to meet with the undercover agent regarding heroin sales, and that Fashina as well as Edward was involved in selling heroin, Fashina even telling the agent to look to Edward if he needed more heroin. In other words, once the district court concluded that Fashina's actions showed that he was intimately involved in the Badru brothers' heroin operation, including the December importation, the court concluded that the December drugs were attributable to him as well as the two other appellants. The court's findings were sufficient under *Childress,* 58 F.3d at 722, and we find no clear error.

## B.

 Finally, we find no merit to appellants' other sentencing challenges. For reasons apparent from our statement of the government's evidence in Part I, *supra,* we find no merit to the contentions of Edward Badru and Fashina that the district court erred in applying the managerial role enhancement based on the evidence of their activities. U.S.S.G. § 3B1.1(b). *See United States v. Strothers,* 77 F.3d 1389, 1394

---

4. The district court's findings with respect to Edward Badru are also brief. Following his counsel's objections to the attributions in the presentence report and the prosecutor's review of the evidence to support the attributions of

drug amounts to Edward, the district court found that the presentence report attributions were proper, reflecting Edward's individual involvement in the conspiracy. We find no clear error.

(D.C.Cir.1996). Further, in light of the evidence of Ishmeal Badru's activities during his incarceration pending sentencing in preparing for his escape while visiting the hospital on a feigned illness, including enlisting the aid of another prisoner and obtaining a handcuff key from a prison guard and a map of the hospital, the district court properly concluded that his actions involved more than mere planning and were sufficient to come within the definition of "attempting to escape" under the obstruction of justice provision of the Sentencing Guidelines. *See* U.S.S.G. § 3C1.1, comment (n.3(e)) (1994). *United States v. Ball,* 999 F.2d 339, 340 (8th Cir.1993); *see United States v. McGill,* 32 F.3d 1138, 1143–46 (7th Cir.1994); *see also United States v. Taylor,* 997 F.2d 1551, 1559–60 (D.C.Cir.1993).

Accordingly, we affirm the judgments of conviction.