56 F.3d 1532
 312 U.S.App.D.C. 462
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America, Appellee,
v.
Michael A. SULLIVAN, Appellant.
 No. 94-3043.
 United States Court of Appeals, District of Columbia Circuit.
 June 6, 1995.
 
 Before: GINSBURG, SENTELLE, and RANDOLPH, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on the appeal from the judgment of conviction in the District Court, and was briefed and argued by counsel. The issues have been accorded full consideration by the Court and occasion no need for a published opinion. See D.C.Cir. Rule 36(b). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED that the judgment of the District Court be affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir. Rule 41.
 
 MEMORANDUM
 
 4
 In December 1993, a jury convicted Michael Sullivan of carrying a pistol without a license, in violation of 22 D.C.CODE Sec. 3204; trafficking in stolen firearms, in violation of 18 U.S.C. Sec. 922(j); and obstruction of justice, in violation of 18 U.S.C. Sec. 1512(b)(3). On appeal, Sullivan claims that the trial court (1) improperly permitted a prosecution witness to remain in the courtroom during trial; (2) erred in admitting two out-of-court statements made by prosecution witnesses; and (3) allowed the jury to convict him on a theory at variance with the indictment. We affirm Sullivan's conviction.
 
 
 5
 In the spring of 1993, the Metropolitan Police Department of the District of Columbia (MPD) discovered that a number of guns had been taken from a storage area maintained by its property control division, where Sullivan worked as a truck driver and delivery person. At trial, Sullivan's neighbor, Russell Hyson, testified that Sullivan had sold him a number of guns, which Hyson then sold to others. Police investigators recovered two guns that had been taken from the MPD storage area. Duk Lee, a grocery store owner, had one of the guns. Lee testified he bought the gun from Bennie Harvin, who testified that he bought the gun from Donna Small, Hyson's son's girlfriend, in 1991. At trial, Hyson said he gave two of the guns he received from Sullivan to Small. Alton Starks had the other gun recovered by the police. According to Hyson, he sold several weapons to Starks. Each weapon he sold came from Sullivan.
 
 
 6
 On July 29, 1992, before the investigation focused on Sullivan, the police interviewed Sullivan regarding the missing guns. Sullivan denied having taken guns from the MPD storage area, and said no one had ever asked him for a weapon and that he had no knowledge of guns in his neighborhood. On March 18, 1993, the police arrested Hyson after he tried to buy a gun from an undercover officer. Hyson agreed to cooperate with the police. At their direction, he called Sullivan. He told Sullivan that the police had been asking questions about Sullivan and that he wanted to meet to "get [their] case together." Sullivan told Hyson to tell the police that Hyson "got them off the street" and that Hyson didn't "know nothing."
 
 
 7
 On March 23, 1993, police investigators visited the house in which Hyson lived with Helen Jones. Hyson was not at home, but Jones let the officers in. The officers recovered a shotgun from the house. The next day, Sullivan arrived unannounced at the police investigators' office. He told the police he had forgotten to tell them in his earlier interview that he had given Hyson two guns, which he had taken from his son, "just to get rid of them." Sullivan also told the officers that he had taken a shotgun from his son's closet and brought it to the house he shared with Jones.
 
 
 8
 On April 30, 1993, a grand jury returned a four-count indictment against Sullivan. The indictment charged Sullivan with (1) theft in the first degree, in violation of 22 D.C.CODE Sec. 3811, 3812(a) (Count One); (2) carrying a pistol without a license, in violation of 22 D.C.CODE Sec. 3204 (Count Two); (3) trafficking in stolen firearms, in violation of 18 U.S.C. Sec. 922(j) (Count Three); and (4) obstruction of justice, in violation of 18 U.S.C. Sec. 1512(b)(3) (Count Four). In December 1993, a jury convicted Sullivan on Counts Two through Four, but acquitted him of stealing guns from the MPD (Count One). The district court sentenced Sullivan to 12 months' imprisonment on Count Two, 24 months' imprisonment on Count Three, and 24 months' imprisonment on Count Four, the terms to be served concurrently. This appeal followed.
 
 
 9
 Sullivan contends that the trial court erred in permitting Sergeant Mullens, the officer assigned to investigate the disappearance of guns missing from the MPD, to remain in the courtroom throughout the trial. Federal Rule of Evidence 615 provides that "[a]t the request of a party the court shall order witnesses excluded," unless the witness is (1) a party who is a natural person; (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney; or (3) a person whose presence is shown to be essential to the presentation of a party's cause. The prosecutor asked the court to let Sergeant Mullens stay in the courtroom under Rule 615's third exception because the officer was "in [her] personal opinion ... essential to the presentation of [the government's] case." Sullivan argues that the prosecutor's statement did not satisfy Rule 615(3)'s requirements.
 
 
 10
 Even if the district court erred in permitting Sergeant Mullens to remain in the courtroom during trial under Rule 615(3), that error was harmless. See FED.R.CRIM.P. 52(a). Sergeant Mullens was the officer assigned to investigate the disappearance of guns from the MPD. The court could have let him attend trial under the second exception to Rule 615, which allows the government to designate a law enforcement officer to remain in the courtroom as the government's representative. See, e.g., United States v. Phibbs, 999 F.2d 1053, 1072-73 (6th Cir.1992) ("Rule 615(2) allows the government to have any law enforcement officer it wants at its counsel table."), cert. denied, 114 S.Ct. 1070-71 (1994); United States v. Rivera, 971 F.2d 876, 889 (2d Cir.1992); United States v. Adamo, 882 F.2d 1218, 1235 (7th Cir.1989); FED.R.EVID. 615 advisory committee's note; S.REP. NO. 1277, 93d Cong., 2d Sess. 26, reprinted in 1974 U.S.C.C.A.N. 7051, 7072-73. Sullivan's argument that his conviction must be reversed because the prosecutor, rather than the court, invoked the wrong exception under Rule 615 is unpersuasive. "That neither the district court nor the government relied upon the exclusion provided by [the appropriate statute] does not, of course, preclude [a reviewing court] from doing so." United States v. Garrett, 720 F.2d 705, 710 (D.C.Cir.1983) (emphasis added), cert. denied, 465 U.S. 1037 (1984).
 
 
 11
 Sullivan next claims the trial court committed reversible error in allowing the prosecutor to introduce two out-of-court statements made by government witnesses as prior consistent statements under FED.R.EVID. 801(d)(1)(B).[1] The first statement Sullivan challenges was Sergeant Mullens' testimony that before trial Duk Lee said he bought a stolen gun in November 1991. Sullivan argues that statement was not consistent with Lee's testimony at trial--where Lee said he "thought" he bought the gun by 1990--and so could not come within Rule 801(d)(1)(B). The second improperly admitted statement, according to Sullivan, was a police officer's testimony that before trial Hyson said he bought guns only from Sullivan. Sullivan maintains that Hyson made this out-of-court statement after his arrest, when he had a clear motive to incriminate Sullivan, and it thus does not rebut any suggestion that he lied at trial.
 
 
 12
 Again, we need not address whether the trial court erred in admitting these statements. We are satisfied that they could not have substantially influenced the jury's verdict, and whatever error the district court may have committed was therefore harmless. See United States v. Clarke, 24 F.3d 257, 267 (D.C.Cir.1994). As to Lee's out-of-court statement, the government presented ample evidence showing that Lee must have bought the gun recovered from him sometime after mid-June 1991. MPD records showed that the gun was in the storage area in mid-June 1991, Bennie Harvin testified he sold it to Lee in 1991, and Hyson acknowledged in his plea agreement that he bought guns from Sullivan between June 17, 1991, and May 30, 1992. Thus, Lee's out-of-court statement that he bought the gun in 1991 was merely cumulative of other evidence heard by the jury. See United States v. Smith, 964 F.2d 1221, 1224 (D.C.Cir.1992). Moreover, Lee's out-of-court statement is unrelated to the evidence linking Sullivan to the revolver recovered from Starks. On this evidence alone, the jury could have convicted Sullivan of trafficking in stolen firearms (Count Three). It follows that the trial court's admission of Lee's statement was, if error, harmless.
 
 
 13
 Regarding Hyson's out-of-court statement that only Sullivan sold him guns, which Sullivan also claims was inadmissible hearsay, the government presented abundant evidence establishing Sullivan's guilt. The government showed that the guns it recovered had been taken from the MPD storage facility, that Sullivan and Hyson were neighbors, and that Hyson sold guns with serial numbers matching those of the guns missing from the MPD. Hyson testified repeatedly at trial that he bought firearms from Sullivan. Sullivan himself admitted he had given Hyson two guns. Moreover, Sullivan made inconsistent statements to the police in his two interviews, and he encouraged Hyson to tell police Hyson "got them off the streets," indicating consciousness of guilt. In view of this evidence, the trial court's admission of Hyson's out-of-court statement could not have substantially influenced the jury's verdict finding Sullivan guilty of selling stolen guns. Whatever error the trial court may have committed in allowing the jury to hear Hyson's out-of-court statement was therefore harmless. Cf. United States v. Allen, 960 F.2d 1055, 1059 (D.C.Cir.), cert. denied, 113 S.Ct. 231 (1992).
 
 
 14
 Finally, Sullivan argues that for Count Three the trial court permitted the jury to convict him on charges at variance from those made in the indictment. Count Three of the indictment charged:
 
 
 15
 Between on or about the Spring of 1991, and on or about May 30, 1992, in the District of Columbia, the defendant, Michael A. Sullivan, knowingly sold firearms which were stolen from the Metropolitan Police Department of the District of Columbia, and which were transported in interstate commerce, knowing and having reasonable cause to believe that the firearms were stolen.
 
 
 16
 The court instructed the jury that, for it to find Sullivan guilty on this charge, the government must have proved beyond a reasonable doubt that Sullivan "knowingly sold a firearm which was stolen from the Metropolitan Police Department," and that Sullivan "had reasonable cause to believe the firearm was stolen." Sullivan reviewed this instruction and told the court it was acceptable. During deliberations, the jury asked the court to clarify its instruction regarding Count Three. It wanted to know whether the government had to prove Sullivan "kn[e]w that the firearms were stolen from MPD or simply that the firearms were stolen." The court responded that neither 18 U.S.C. Sec. 922(j), the statute under which Sullivan was charged,[2] nor its earlier instructions required the jury to find Sullivan knew the guns were stolen from the MPD.
 
 
 17
 On appeal, Sullivan contends that the court essentially told the jury it could convict Sullivan for knowingly selling any stolen guns, an instruction at variance with the indictment's charge that Sullivan sold guns stolen from the MPD. Sullivan mischaracterizes the district court's instructions. The jury did not ask whether the guns at issue in Count Three had to be stolen from the MPD. Rather, it wanted to know if it had to find that Sullivan knew the guns had been stolen from the MPD. The trial court's initial instructions and its response to the jury's inquiry were entirely consistent with the allegations in Count Three and with 18 U.S.C. Sec. 922(j), neither of which required the government to prove Sullivan knew the guns were stolen from the MPD. The indictment and the statute required the government to show only (1) that Sullivan knowingly sold a firearm, (2) that this firearm was stolen from the MPD, and (3) that Sullivan knew it was stolen.
 
 
 18
 Taking his argument one step further, Sullivan claims that the evidence was insufficient to support his conviction on Count Three. According to Sullivan, the government presented no evidence that "Sullivan received stolen MPD guns from anyone else if he was not the thief." Because the jury acquitted him of stealing guns from the MPD (Count One), Sullivan reasons that the jury could not conclude that he knowingly sold stolen guns. We disagree. There is no dispute that the guns the police recovered from Lee and Starks were stolen from the MPD. And from Sullivan's own incriminating statements, the jury was entitled to find that he knew he had trafficked in stolen firearms. In his first interview, Sullivan denied any knowledge of guns in his neighborhood, directly contradicting his later admission that he had "given" Hyson two guns. Moreover, Sullivan instructed Hyson to say Hyson didn't "know nothing" and that he "got them off the street," from which the jury could reasonably have concluded Sullivan knew he had supplied Hyson with stolen weapons.
 
 
 19
 In conclusion, if the trial court erred in allowing Sergeant Mullens to remain in the courtroom during trial under FED.R.EVID. 615(3) or in admitting two out-of-court statements under FED.R.EVID. 801(d)(1)(B), the errors were harmless. The trial court did not permit the jury to convict Sullivan of a crime at variance with the allegations of Count Three, and the evidence was sufficient to support his conviction on that count.
 
 
 
 [1]
 Rule 801(d)(1)(B) provides that a statement is not hearsay if it is "consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive."
 
 
 [2]
 18 U.S.C. Sec. 922(j) prohibits a person from selling a stolen firearm "knowing or having reasonable cause to believe that the firearm ... was stolen."