UNITED STATES of America, Plaintiff-Appellee,

v.

Gregory Lee McCREA, Defendant-Appellant.

No. 77–3994.

United States Court of Appeals, Ninth Circuit.

Sept. 1, 1978.

Amended Oct. 10, 1978.

Michael J. Cronin (argued), Winston & Cashatt, Spokane, Wash., for defendant-appellant.

Judith Corbin, Asst. U. S. Atty. (argued), Spokane, Wash., for plaintiff-appellee.

Before DUNIWAY and CHOY, Circuit Judges, and GRANT,* District Judge.

PER CURIAM:

McCrea was convicted in a jury trial of possession of an unregistered firearm (destructive device) in violation of 26 U.S.C. § 5861(d). On this appeal, he contends that certain incriminating evidence should not have been admitted at trial because:

1. No probable cause existed for issuance of the search warrant by which a pipe bomb and other evidence were seized.

2. The search and seizure went beyond the scope of the search warrant.

3. He made inculpatory statements at the time of the search without having been fully advised of his *Miranda* rights.

We affirm the judgment of conviction.

## FACTS

Two ladies, social workers from the State Department of Social and Health Services, visited a welfare recipient, Kip McCrea, at her home in Spokane. Mrs. McCrea is the former wife of appellant. While conversing with Mrs. McCrea in the living room, the social workers saw what in their eyes was the stock and handgrip of a machine gun under a chair and many bullets in another part of the room. Mrs. McCrea told them that her ex-husband was storing his guns there although he did not live there; that he used the basement of the house to keep guns, reloading equipment and gun parts; and that he was going soon to Montana on a machine gun shooting spree. On the basis

* The Honorable Robert A. Grant, United States District Judge for the Northern District of Indiana, sitting by designation.

of this information, Bureau of Alcohol, Tobacco and Firearms (A.T.F.) Agent Carpenter obtained a search warrant which authorized a search of Mrs. McCrea's home.

In executing the search, A.T.F. agents found in the living room an M–1 rifle which appeared to be undergoing conversion to an automatic-type weapon. Further search of the living room disclosed a Browning machine gun which had been cut in half and various books and pamphlets about guns, explosives, street-fighting and counterinsurgency.[1] Proceeding to the basement, they discovered parts for an M–2 carbine, gun powder, and, in a box, blasting caps and fuses, unfinished pipe bombs and a completed pipe bomb.

While the search was in progress, appellant appeared. The A.T.F. agents gave him a copy of the search warrant and told him why they were there. Agent Carpenter advised appellant that he need not talk to the agents, that whatever he said could be used against him in a court proceeding, and that he was not under arrest and would not be arrested unless he interfered with their search. In response to questioning by the agents, appellant said that he rented the basement and that everything in the basement was his property, including the caps, fuses, powder and pipes in the box.

The pipe bomb, two of the books and appellant's statements to the agents were admitted into evidence.

## PROBABLE CAUSE

■ Appellant argues that the two social workers were not credible and reliable informants because they were not shown to be knowledgeable about firearms. He claims that their conclusions about the "machine gun" were mere beliefs or suspicions and insufficient to constitute probable cause under *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

However, in *Aguilar* the Court was speaking of information from an unidentified informant who was not shown to have spoken on personal knowledge or to have relied upon specific facts or circumstances. Here, on the other hand, the two ladies gave their specific observations about the weapon and the bullets. What Mrs. McCrea told them regarding appellant's storing of guns, gun parts and equipment and his preparing to go on a machine gun shooting spree substantiated their belief that what they saw under the chair was a machine gun. These were not professional informants, but known private citizens giving good faith observations upon which it was reasonable to rely. *See Rutherford v. Cupp*, 508 F.2d 122, 123 (9th Cir. 1974), *cert. denied*, 421 U.S. 933, 95 S.Ct. 1663, 44 L.Ed.2d 92 (1975); *United States v. Burke*, 517 F.2d 377, 380 (2d Cir. 1975). *Cf. United States v. Vasquez-Cazares*, 563 F.2d 1329 (9th Cir. 1977), *cert. denied*, 434 U.S. 1021, 98 S.Ct. 746, 54 L.Ed.2d 769 (1978) (anonymous tip about defendant's conduct and vehicle held sufficiently reliable for a vehicular stop). There was probable cause for the issuance of the search warrant.

## SCOPE OF THE SEARCH WARRANT

■ We see no merit in appellant's contentions that the pipe bomb was found in a search that exceeded the scope of the warrant. The warrant directed search of the premises at a specific address for a machine gun and parts concealed there as stated in the supporting affidavit. The supporting affidavit related what the two ladies told the A.T.F. agents including the fact that appellant was storing his guns, gun parts and related equipment in the basement. Search of the basement and the boxes there

1. The inventory attached to the return of search warrant lists the following ten book titles:

  Special Forces Demolition Techniques
  Handbook Of The Browning Machine Gun, Caliber .30 Water-Cooled Model
  We Shall Fight In The Streets
  TM 31–210 Improvised Munitions Handbook
  OSS Sabotage & Demolition Manual
  ST 31–176 Counterinsurgency Planning Guide
  TM 31–201–1 Incendiaries
  "SAFN" Model 49 FN Automatic Rifle
  High-Low Boom! Modern Explosives
  The Machine Gun Volume II, Part VII

was clearly within the scope of the warrant.[2]

■ However, we are somewhat vexed by the admission into evidence of the two books entitled "Improvised Munitions Handbook" and "OSS Sabotage & Demolition Manual". They were improperly put into evidence. *See* Fed.R.Evid. 403. These titles alone would have the tendency to prejudice the defendant. The prosecuting attorney need not have used such literature as evidence—it was entirely unnecessary to support the charge of possession of the unregistered destructive device. Still, in the light of the other items of overwhelming evidence which were properly admitted, we feel that this error was harmless. Moreover, the Government attorney made no mention of those books in his opening statement to the jury, nor did he attempt to capitalize on them during the trial itself.[3]

## MIRANDA WARNINGS

■ McCrea arrived at the house in a belligerent mood with a pistol tucked into his belt demanding to know what the agents were doing in his house. His colloquy with the agents occurred on the front porch.

Immediately after disclosing their purpose for being there and giving him a copy of the search warrant, an agent told McCrea that he was not under arrest and would not be arrested by them unless he interfered with their search.[4] Then before he made any inculpatory statements, Agent Carpenter gratuitously advised appellant that he had the right to remain silent and that anything he said could be used against him in a court proceeding.[5] The retort was "Yeah, yeah, yeah, I understand those." During the ensuing conversation between the agents and appellant, Agent Carpenter again warned him about his right not to talk and the consequences of his talking. Appellant claims that the inculpatory statements he made were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 10 L.Ed.2d 694 (1966).

It is undisputed that the requirements of *Miranda* are only triggered "after a person has been taken into custody or otherwise deprived of his freedom." 384 U.S. at 444, 86 S.Ct. at 1612. *See Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). The record shows that appellant was not placed in such a custodial situation. He was free to leave the premises at any time. In fact, the reasonable inference we obtain from reading the trial transcript is that the agents would have preferred that he leave so that they could continue their search without interference from him. Therefore, *Miranda* warnings were not required and appellant's inculpatory statements were properly admitted.

AFFIRMED.

---

2. Because the pipe bomb was found pursuant to a valid search, it is unnecessary for us to consider appellant's arguments concerning the "plain view" doctrine.

3. The summations of counsel to the jury are not included in the record before us. But since appellant does not contend that the Government attorney referred to the inflammatory literature in any way during any portion of the proceedings, we need not pursue this line of inquiry into the closing statements of counsel.

4. The A.T.F. agents did not arrest McCrea. The record is not clear, but it appears that some time after they departed, the city police, whom McCrea himself had called prior to going to the house, arrested him.

5. These are only two of the warnings required by *Miranda*.