**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Randy Gean ELLIS, Defendant–**
**Appellant.**

**No. 97–30238.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 7, 1998.

Decided July 2, 1998.

Mark Bennett Weintraub, Assistant Federal Public Defender, Eugene, Oregon, for defendant-appellant.

Kristine Olson, United States Attorney, Portland, Oregon, for plaintiff-appellee.

Before: HAWKINS, THOMAS, and SILVERMAN, Circuit Judges.

MICHAEL DALY HAWKINS, Circuit Judge:

Randy Gean Ellis ("Ellis") appeals his conviction and sentence for receiving and concealing stolen explosives, see 18 U.S.C. § 842(h),[1] and knowingly receiving or possessing explosives after being convicted of a felony, see 18 U.S.C. § 842(i)(1).[2]

## FACTS

In June 1993, employees of Klamath Pacific Corp. discovered certain explosive materials missing from the company's gravel pit in Klamath Falls, Oregon. The materials consisted of nonelectric caps, brown cap boosters, high explosives, connecting wire, lead-in line and ammonium nitrate.

Three months later, Ellis, while in Kern County Jail on other charges, contacted and was then interviewed by the FBI. Ellis explained that he had information regarding the Klamath explosives and that a man named "Joe" had the explosives. Ellis was later re-interviewed and drew a diagram mapping out the location where the materials had been taken.

Rodney Bortis had earlier informed local authorities that Ellis and one Richard Depew came to his apartment in May 1993 and borrowed a copy of *The Anarchist Cookbook*, a self-described primer for the student of "individual actions of destruction" that contains chapters titled "Drugs," "Electronics, Sabotage, and Surveillance," "Natural, Nonlethal, and Lethal Weapons," and "Explosives." Ellis and Bortis had with them a bag of white crystals they described as containing 100 pounds of ammonium nitrate, and explained that they were looking for a way to turn it into a bomb.

Richard Depew eventually agreed to cooperate with law enforcement officers, and named Ellis as his accomplice in the theft of the explosives. Deputies later searched the home of Ellis's parents and found a spool of lead-in line that was traced to the explosive materials missing from the Klamath gravel pit. In the course of the search, a deputy photographed the tires of a truck parked at the house and noticed the tire tread was similar to the tracks left at Klamath.

At Ellis's jury trial, an immunized Richard Depew testified he had been with Ellis when the explosive materials were stolen and had helped Ellis load them into the back of a truck. Depew recounted how Ellis drove back to his parents' house, leaving the pickup and explosive materials there. Ellis later threatened to kill Depew if he told anyone about the theft.

Ellis was convicted of both receiving and concealing stolen explosives and knowingly receiving or possessing explosives after being convicted of a felony, and was sentenced to 103 months imprisonment. He appeals both his conviction and sentence.[3]

## ANALYSIS

### I. Admission of Evidence

#### A. Bortis Statements

Rodney Bortis was allowed, over the hearsay objection of Ellis, to testify that when he attempted to obtain explosives from one Terry Grossarth, Grossarth had responded that "the people with the explosives ('Randy [the defendant] and Rich') were in jail."

---

1. That statute provides:
   It shall be unlawful for any person to receive, possess, transport, ship, conceal, store, barter, sell, dispose of, or pledge or accept as security for a loan, any stolen explosive materials which are moving as, which are part of, which constitute, or which have been shipped or transported in, interstate or foreign commerce, either before or after such materials were stolen, knowing or having reasonable cause to believe that the explosive materials were stolen.

2. That statute provides:

   It shall be unlawful for any person—
   (1) who is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
   to ship or transport any explosive in interstate or foreign commerce or to receive any explosive which has been shipped or transported in interstate or foreign commerce.

3. Because we reverse and remand based on other issues, we do not reach Ellis's claims of sentencing error.

■ The government concedes that this statement would normally constitute hearsay, but argues that it is nonetheless admissible under *United States v. Collicott*, 92 F.3d 973 (9th Cir.1996). Fed.R.Evid. 801(d)(1)(B) provides that a witness's statement otherwise constituting hearsay may be admitted if it is "offered to rebut a charge of 'recent fabrication or improper influence or motive.' "[4] *Collicott*, 92 F.3d at 978–79 (quoting Rule 801(d)(1)(B)). Additionally, under the opened door doctrine, we noted in *Collicott* that "[a]fter a witness has been impeached with prior inconsistent statements, we have admitted the entire conversation or document from which the impeachment statements were drawn if it has significant probative force bearing on credibility ... by placing the inconsistencies in a broader context, demonstrating that the inconsistencies were a minor part of an otherwise consistent account." *Id.* at 980 (citations and internal quotation marks omitted).

■ The government maintains that Bortis's statement was admissible because it was in response to defense counsel's attempt to impeach Bortis by implying that he had received lenient treatment in exchange for his cooperation with police, specifically, by agreeing to purchase explosives from Grossarth. This plainly does not meet Fed. R.Evid. 801(d)(1)(B)'s requirement of rebuttal to a charge of recent fabrication. Nor is this statement admissible under *Collicott*'s opened door doctrine, which allows the admission of an entire prior conversation in order to place another prior inconsistent statement within a broader context. Rather, it was simply a recollection of a related event.

Because the government admits that Bortis's statements were hearsay, and because his statements do not satisfy *Collicott* or *Fed.R.Evid. 801(d)(1)(B)* (and the government concedes no other hearsay exception applies), the admission of this statement was error.

■ Nevertheless, such an error may be considered harmless unless we have "grave doubt whether the erroneously admitted evidence substantially affected the verdict."[5] *Collicott*, 92 F.3d at 984. The potential harm from the admission of the Bortis testimony is that the jury learned that Ellis had been in jail on other charges prior to his indictment on the present charges. But one of the counts in Ellis's indictment charged him with knowingly receiving or possessing explosives after being convicted of a felony. In addition, two federal agents testified that Ellis had been incarcerated in October 1993. Because the error resulted in the admission of evidence that was properly before the jury, the potential that it affected the outcome of the trial was minimal and, standing alone, does not constitute a basis for reversal.

### B. *The Anarchist Cookbook*

Ellis moved to exclude the government's proposed Exhibit 13, *The Anarchist Cookbook* ("the Cookbook"), prior to trial.[6] After the district court denied Ellis's motion, Ellis again unsuccessfully objected at trial "based on relevance grounds and also under [Fed. R.Evid.] 403," arguing that the book "contains a lot of irrelevant and inflammatory material about such things as drugs, revolutionary politics, sabotage and inflammatory material that just don't go to any issues in the case." The government responded that the book "contains several recipes for explosives and is relevant to the defendant's intent." The district court admitted the Cookbook in its entirety.[7]

---

4. More specifically, a statement is not hearsay if the witness testifies at trial, is subject to cross-examination, and the following facts apply: there has been a charge of improper motive or fabrication of the witness's testimony, the proponent (in this case, the government) offers a prior statement that is consistent with the declarant's challenged testimony, and the prior consistent statement was made before the motive to falsify arose. *See Collicott*, 92 F.3d at 979.

5. Because the defendant objected to the error at trial, it is not subject to plain error review, *see*

*United States v. Johnson*, 132 F.3d 1279, 1284 (9th Cir.1997).

6. In a motion in limine dated April 18, 1997, Ellis argued that his possession of the Cookbook "has little, if any, relevance. Even if relevant, the probative value of such information is outweighed by its prejudicial effect. Fed.R.Evid. 403."

7. We do not decide whether a redacted version would be admissible under Fed.R.Evid. 403.

On appeal, Ellis reiterates his argument that the Cookbook was unfairly prejudicial under Fed.R.Evid. 403. We agree.

Fed.R.Evid. 403 provides:

Although relevant,[8] evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

■ Although trial courts · have fairly broad discretion under Fed.R.Evid. 403, *see United States v. Spencer,* 1 F.3d 742, 744 (9th Cir.1993), ·to admit or exclude relevant evidence, it should be excluded if its probative value is outweighed by unfair prejudice.[9] *See United States v. Layton,* 855 F.2d 1388, 1402 (9th Cir.1988), *overruled on other grounds by Guam v. Ignacio,* 10 F.3d 608 (9th Cir.1993). "Unfair prejudice" refers to an "undue tendency to suggest decision on an improper basis, commonly, though· not necessarily, an emotional one" or "evidence designed to elicit a response from the jurors that is not justified by the evidence." 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 403.04[1][b] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed.1997).

In *United States v. Giese,* 597 F.2d 1170 (9th Cir.1979), while we ultimately approved of the admission of a potentially prejudicial book (*From the Movement toward Revolution*), we emphasized the special circumstances of that case [10] and cautioned:

[W]e are not establishing a general rule that the government may use a person's reading habits, literary tastes, or political views as evidence against him in a criminal

prosecution. In many cases such evidence would be clearly inadmissible. ·

*Id.* at 1185.

Similarly, in *United States v. McCrea,* 583 F.2d 1083, 1086 (9th Cir.1978), we emphasized· that prejudicial books and manuals— there · the *OSS Sabotage and Demolition Manual*—are normally inadmissible when they are "entirely unnecessary·to support the charge of possession.".

■ That is precisely the· case here: Ellis was charged with mere receipt and possession of the stolen explosives. Intent was not an element of the charge; Ellis either knowingly had the explosive devices in his possession or did not. His possession of *The Anarchist Cookbook* .was simply not relevant to the charge he faced: .

[When] possession [i]s all the government ha[s] to prove[ ] the defendant's intent [is] immaterial. One cannot logically infer *possession* .of firearms and explosives (as opposed to knowledge of how to use them) from mere possession of books about guns, bombs, and related subjects.

*Giese,* 597 F.2d at 1187 (emphasis in the original). In *McCrea,* we also emphasized that "[t]he prosecuting attorney need not have used [the *Improvised Munitions Handbook* and the *OSS Sabotage & Demolition Manual* ] as evidence [because these books were] entirely unnecessary to. support the charge of possession of. the unregistered destructive device." 583 F.2d at 1086.

If the government had prosecuted Ellis under 18 U.S.C. § 844(d),[11] then intent would have been an element of the crime and perhaps portions of *The Anarchist Cookbook* might have been relevant to demonstrate the

---

8. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action ·more probable or less probable than it would be without the evidence. Fed.R.Evid. 401. .

9. Ellis argues only unfair prejudice, rather than any of the other factors limiting judge's broad discretion in Rule 403 determinations.

10. The "peculiar· circumstances" of the· case were: "the book ... bore the fingerprints of Griese and three of his co-conspirators and thus tended to corroborate witnesses' testimony that

the conspirators associated with each other.... [I]t was proper to ask Griese to ·read extracts from the book on cross-examination because he opened the door to that line of inquiry by introducing 18 books as 'evidence of his· peaceable character during ·his own testimony ·on · direct examination." *Giese,* 597 F.2d at 1185.

11. Title 18 U.S.C. § 844(d) forbids the transport or receipt in interstate commerce of "any explosive with the knowledge or intent that it· will be used to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property...."

defendant's intended use of the explosives. However, Ellis was not being prosecuted under 11 U.S.C. § 844(d). Here, any probative value of the *The Anarchist Cookbook* was substantially outweighed by the danger of unfair prejudice from what the government concedes is a "revolutionary" text, and is therefore likely to elicit a response from jurors that causes them to reach a conclusion based on emotion rather than the evidence presented. *See United States v. Hodges,* 770 F.2d 1475, 1479 (9th Cir.1985).

### C. Destructive Capability of Stolen Explosives

During the testimony of Mark Kelly, a former blaster for Austin Powder Company, Ellis objected to the following questions relating to the destructive capability of the stolen explosives.

#### DIRECT EXAMINATION

Government [Mr. Fitzgerald]: Now, based on the quantities that were taken, can you tell the jury whether or not the explosives had the capability of destroying a car?

Mark Kelly: Absolutely.

Attorney for Ellis [Mr. Weintraub]: Objection, Your Honor.

The Court: Overruled.

Government: What about a residential dwelling?

Kelly: Absolutely.

Ellis: Same objection, Your Honor. Can I have a continuing objection if he's going to continue?

The Court: No. The objection is overruled.

Government: And based on the quantities that were found to be missing, was there the ability to destroy an office building?

Ellis: Same objection, Your Honor.

Kelly: Absolutely.

Ellis: Rule 403, Your Honor.

The Court: Just a moment. I understand your objection, and do you wish to be heard on that, Mr. Fitzgerald?

Government: I do, Your Honor. Perhaps it would be best outside the presence of the jury.

The Court: Well, are you offering it for the purposes of showing intent as argued in your trial brief?

Government: That's correct, Your Honor, as well as to show potential victim impact.

The Court: Mr. Weintraub, do you wish to be heard?

Ellis: Nothing further, Your Honor.

The Court: Thank you. The objection is overruled.

. . . .

#### REDIRECT

Government: Based on the quantities of explosives that you found to be missing from the storage site on July 5, 1993, is it your testimony that that quantity was sufficient to destroy an office building?

Kelly: Absolutely.

■ Ellis argues that this testimony was inadmissible as unfairly prejudicial under Fed.R.Evid. 403. Ellis argues this is especially so given that the jury could have drawn a connection between the instant case and the highly publicized bombing of a federal office building in Oklahoma City which had occurred shortly before Ellis's trial.

We agree. The district court admitted the testimony after the government stated that it was offered to show intent and potential victim impact. Neither intent nor "potential victim impact" were elements of the charge, nor were they relevant. The admission of these statements was therefore error because they were unfairly prejudicial and had virtually no probative value to the actual charges Ellis faced.

### II. Harmless Error Analysis

■ Because we have "grave doubt whether the erroneously admitted evidence substantially affected the verdict," *Collicott,* 92 F.3d at 984, the admission of the statements regarding the destructive capability of the explosive materials and the admission of the Cookbook constituted error that was not harmless. The government's reliance on this evidence "created a grave danger that the defendant's guilt was established *not* by evidence relevant to the particular offense being tried, but rather" by evidence that was wholly unrelated to these offenses. *United States v. Vizcarra–Martinez,* 66 F.3d 1006, 1017

(9th Cir.1995) (citation and internal quotation marks omitted) (emphasis added).

We reverse Ellis's conviction and sentence and remand for proceedings not inconsistent with this Opinion, including the government electing to re-try Ellis without the erroneous evidence.[12]

REVERSED and REMANDED.

---

12. *See Lockhart v. Nelson*, 488 U.S. 33, 39–42, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988); *United States v. Chu Kong Yin*, 935 F.2d 990, 1001 (9th Cir.1991).