United States Court of Appeals

Fifth Circuit

**F I L E D**

November 12, 2003

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-50874

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

V.

BRANDON L. WALTERS,

Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Texas

Before JOLLY and WIENER, Circuit Judges, and ROSENTHAL,[*] District
Judge.

ROSENTHAL, District Judge:

On July 31, 2001, Air Force officer Janet McWilliams opened a
package addressed to her.  It exploded when opened, causing severe
injuries.  The government charged defendant Brandon Walters with
making and sending the bomb.  Evidence at trial showed that Walters
blamed McWilliams for his recent discharge from the Air Force on

_____

[*]     District Judge of the Southern District of Texas, sitting
by designation.

mental health grounds.  A jury convicted Walters on all five counts charged in the indictment.  The conviction included two counts under 18 U.S.C. § 924(c)(1) for using a destructive device during and in relation to two crimes of violence, one for assaulting a federal officer and one for damaging a federal building.  The judge imposed a life sentence, mandatory for a second or subsequent conviction under section 924(c)(1).  18 U.S.C. § 924(1)(C)(ii).

Walters raises three arguments on this appeal: (1) the district court erred in admitting into evidence the title and portions of a book on explosives; (2) the district court erred in failing to find a violation of the government's obligation timely to disclose exculpatory evidence and in failing to grant Walters a continuance based on late disclosure; and (3) the district court erred in sentencing Walters based on two convictions under 18 U.S.C. § 924(c)(1) arising from a single use of a single destructive device.

This court finds no merit to Walters's first two challenges to his convictions.  As to the third challenge, this court concludes that under this circuit's decision in United States v. Phipps, 319 F.3d 177 (5th Cir. 2003), the district court erred in sentencing based on two convictions under section 924(c)(1).  Accordingly, we affirm the convictions; vacate the sentences imposed for the section 924(c)(1) counts; and remand for resentencing.  On remand, the government is to elect which of the two section 924(c)(1)

counts is to be dismissed and Walters is to be resentenced on the remaining count.

## I. Background

On May 8, 2001, Brandon Walters joined the United States Air Force and reported to the Lackland Air Force Base in San Antonio, Texas. Walters had eight years of experience as an electronics technician in the United States Navy. Walters came to Lackland to take a course in electronics. Walters exhibited inappropriate and bizarre behavior to the personnel manager, First Sergeant Janet McWilliams, and to students. Based on her own observations and on reports from students, McWilliams recommended that Walters receive a mental health evaluation to assess his fitness for duty. Walters reacted by telling McWilliams that she and the students who complained about him were "in big trouble" because "there was nothing wrong with him."

A military psychiatrist diagnosed Walters as having a narcissistic personality disorder, declared him "potentially dangerous," and recommended his discharge from the Air Force. Walters was heard denouncing the people who were "ruining his career," including McWilliams. On June 15, 2001, McWilliams and her supervisor met with Walters at the medical facility to deliver his discharge package. Seven days later, Walters received his discharge papers and a one-way plane ticket to his home state of Utah.

Walters was "extremely irate, disrespectful, [and] threatening" at this meeting. A nurse who witnessed the meeting reported that Walters told McWilliams that "she was no one, she could not control him." When McWilliams demanded that Walters return his military identification, he refused and claimed to have lost it. As McWilliams left the room, Walters warned her to "beware, beware." Hospital personnel overheard Walters declaring that McWilliams "was just scared because she messed up and she should be scared because he wasn't going anywhere" and that "he would . . . set a bomb off on the airplane just so that he would let the First Sergeant know that she could not control him anymore."

On June 23, 2001, Air Force officers escorted Walters to the airport for his Utah flight. The officers informed Walters that he was not allowed back on the base and that his picture would be posted at the entrance gates. Walters refused to board the airplane. He ran from the officers, throwing his ticket into a trash can. Later that same day, Walters checked into the Cactus Hotel in San Antonio, Texas, using what the hotel owner believed to be a military identification card. Walters padlocked his hotel door and refused to permit anyone to enter, including the cleaning staff. During his thirty-day stay at the hotel, Walters asked a desk clerk where he could purchase fireworks. Another clerk heard firecrackers exploding in Walters's room on several occasions. A

4

hotel guest observed Walters taking out his own trash, wearing latex rubber gloves.

On July 30, 2001, a Lackland instructor saw an individual in civilian clothes, whom he later identified as Walters, walking down the hall of a classroom building. Walters ignored the instructor's greeting. Later that day, a student found a brown paper package the size of a shoe box, addressed to "First Sergeant Jan McWilliams," in the restroom of the same classroom building. The return address read "First Sergeants Association" of Clearmont, Idaho. The student gave the package to his supervisor, who placed it in intra-base mail for delivery.

McWilliams received the package the following day and opened it in her office. She had just enough time to observe "coins, metal objects, and wires" when the package exploded. McWilliams saw her own hands and fingers flying off. She lost both hands and sustained second- and third-degree burns. McWilliams remained conscious and called out for help. When responders asked McWilliams who could have "possibly done this," McWilliams identified Walters.

Law enforcement agents went to the Cactus Hotel on August 1, 2001 and caught Walters as he attempted to run out the back door. Agents found the military identification Walters had reported missing in his bag. The owner of the Cactus Hotel told agents that on the day of the bombing, Walters had watched the news on the television in the hotel lobby, something he had not done during his

5

thirty-day stay at the hotel. Agents searched Walters's hotel room and found a number of items consistent with materials recovered from the office where the bomb had exploded.

Federal agents investigating the site of the explosion recovered items that enabled experts to reconstruct the bomb and describe its design and components. The items recovered included part of a Panasonic battery box, two fragments of a steel bottle, two nickels, part of a battery, a capacitor, an end cap for an automobile dome lightbulb, an epoxy plug, blue-coated wire, and dental floss used in a "booby-trap" trigger device. Agents determined that the bomb assembly was contained in a box used to store Panasonic batteries and used an explosive charge of black powder found in fireworks. The powder was contained in a steel bottle and engaged a firing chain that used a green fireworks fuse, a battery, the circuit-board portions from a disposable camera, and the end cap of an automobile dome lightbulb. A gray epoxy was used to make the bomb. Upon explosion, the charge propelled the coins outward to act as shrapnel. Surgeons removed some of the coins from McWilliams.

When law enforcement agents searched Walters's Cactus Hotel Room, they discovered coins lying on the bed, blue-coated wire, an empty Phillips-brand automobile dome light box, and a pair of rubber gloves with pieces of epoxy attached. Agents also recovered a "Leatherman" multi-purpose tool and a soldering iron. Remnants of melted solder were recovered from the carpet. Forensic

6

comparison of the items found in Walters's hotel room to those recovered in what remained of McWilliams's office revealed key similarities. The blue-coated wires at each location were seven-strand, 26-gauge tin-copper wire manufactured by the same Japanese company. Marks on the steel bottle fragments recovered from the bomb site were consistent with the marks made by the Leatherman tool found in Walters's hotel room. Steel filings taken from the blade of the Leatherman tool and from the carpet in Walters's hotel room matched the metallic composition of steel filings taken from McWilliams's office – all the filings were 19% chromium, 73% iron, and 8% nickel. Microscopic examination of the epoxy recovered from Walters's Leatherman tool and latex gloves and the epoxy from the bomb site revealed no differences.

Federal agents also searched Walters's grandmother's Utah home, where Walters had lived from October 2000 to May 2001. Officers found an automobile registered under Walters's name in the backyard. Walters's grandmother told agents that a work area in the basement was "Brandon's area." In that part of the basement, the agents discovered remnants of hundreds of firecrackers, bottle rockets, and other fireworks, as well as ammunition. Agents also found a timing device, wire, wire cutters, batteries, transistors, a roll of solder, and pieces of circuit board from a disposable camera. Agents found a broken lightbulb with exposed bridge wires. At trial, an agent explained that materials to make a package bomb

can readily be obtained by breaking the glass out of a lightbulb and using the wires as a fusing system.

Law enforcement agents also searched Walters's mother's Utah home. In that house, the agents recovered a book entitled <u>The Anarchist's Cookbook.</u> The book in part described how to make explosive devices. Walters's name was written on the inside cover.

In a superseding indictment, the government charged Walters with: (1) assault on a federal officer with a deadly weapon, in violation of 18 U.S.C. § 111 (Count One); (2) use of a destructive device in a crime of violence (assault on a federal officer with a deadly weapon), in violation of 18 U.S.C. § 924(c) (Count Two); (3) damaging a federal building with explosives, in violation of 18 U.S.C. § 844(f) (Count Three); (4) use of a destructive device in a crime of violence (damaging a federal building with explosives), in violation of 18 U.S.C. § 924(c) (Count Four); and (5) possession of an unregistered destructive device, in violation of 26 U.S.C. § 5861(d) (Count Five).

On May 28, 2002, almost a month before trial, prosecutors wrote a letter to Walters's defense counsel about an individual named William Bott, who had worked at the base. In the letter, the government stated that Bott had told a coworker that he had thought of hiding a bomb in a men's restroom at Lackland. The letter disclosed Bott's current home address and telephone number and added that Bott was in Virginia at the time of the bombing. The

8

government attached a copy of a telephone interview with Bott, in which he denied making any bomb threats.  Walters objected to the disclosure as untimely and asked for a continuance.  The court did not grant the motion.

Before trial, the government filed a notice of intent to use evidence under Rule 404(b) of the Federal Rules of Evidence.  The trial court ruled, over Walters's objection, that the government could introduce the title of The Anarchist's Cookbook, the page on which Walters's name appeared, and the chapter that dealt with making certain types of bombs.  In the instructions to the jury, the court provided a limiting instruction on "other bad act" evidence.

At trial, a jury convicted Walters on all counts.  The district court sentenced Walters to serve 262 months on Counts One, Three, and Five, to run concurrently; 360 months on Count Two, to run consecutively; and life in prison on Count Four, as a mandatory sentence for a second conviction under 18 U.S.C. § 924(c)(1).[1]  Walters filed a timely notice of appeal.

On appeal, Walters argues that the district court erroneously: (1) admitted into evidence the title and redacted content of The Anarchist's Cookbook; (2) failed to find a Brady violation in the

_____

[1]  Section 924(c) provides that "[i]n the case of a second or subsequent conviction under this subsection, the person shall . . . if the firearm involved is a machine gun or destructive device, or is equipped with a firearm silencer or firearm muffler, be sentenced to imprisonment for life."  18 U.S.C. § 924(c)(1)(C)(ii).

9

government's untimely disclosure of Bott's statement and denied Walters a continuance to investigate it; and (3) permitted dual convictions under section 924(c)(1) for a single use of a destructive device.

This court finds that the trial judge did not err in admitting parts of The Anarchist's Cookbook or in denying a continuance. This court also concludes that under recent case law decided in this circuit, the district court did err when it sentenced Walters based on two convictions under section 924(c) for a single use of a single destructive device. Under this recent case authority, the sentences for the section 924(c) counts are vacated and this case is remanded for resentencing on the section 924(c)(1) count remaining after one of the section 924(c)(1) counts is dismissed.

## II. Analysis

### A. Admission of The Anarchist's Cookbook

Walters argues that the district court erred in admitting into evidence both the title and a chapter from The Anarchist's Cookbook. The government offered the evidence under Federal Rule of Evidence 404(b), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

10

FED. R. EVID. 404(b). Extrinsic evidence must satisfy two criteria for admission under Rule 404(b): (1) it must be relevant under Federal Rule of Evidence 401 to an issue other than the defendant's character; and (2) it must have probative value that substantially outweighs its prejudicial impact under Federal Rule of Evidence 403. United States v. Beechum, 582 F.2d 898, 911-13 (5th Cir. 1978) (en banc). This court reviews the admission of evidence under Rule 404(b) for abuse of discretion. United States v. Grimes, 244 F.3d 375, 383 (5th Cir. 2001). Although this review is "necessarily heightened" in criminal cases, United States v. Anderson, 933 F.2d 1261, 1268 (5th Cir. 1991), abuse of discretion is only reversible if a defendant can demonstrate prejudice. United States v. Coleman, 78 F.3d 154, 156 (5th Cir. 1996).

The government contends that the only portions introduced from The Anarchist's Cookbook were relevant to show that Walters knew how to make bombs similar to the bomb that injured McWilliams. Walters responds that two categories of differences between the government's theory against him and the contents of the book diminish its relevance: Walters asserts that the type of bomb used in this case was very different from the explosive devices discussed in the book, and that the government's theory as to the motivation for the bombing – revenge for a private wrong – was very different from The Anarchist's Cookbook's anti-government rhetoric. Walters contends that differences so diminish the relevance of the book that the prejudicial impact of the title and the sections of

11

the chapter that included discussions of explosions of large buildings – an emotionally charged topic after September 11, 2001 – outweigh the minimal probative value.

The government gave notice before trial that it would offer portions of The Anarchist's Cookbook as extrinsic evidence under Rule 404(b).  Coleman, 78 F.3d at 156.[2]  The trial court carefully limited what the government could show the jury, admitting only the title for identification purposes, the inside cover page on which Walters's name was handwritten, and one chapter dealing with making "explosives and booby traps."  The trial court found that, so limited and with the proper instruction, the admitted portions of The Anarchist's Cookbook met the requirements of Rule 404(b).  This court agrees.

The first issue is the extent to which the admitted portions were relevant under Rule 401 to an issue other than Walters's

---

[2]  The government did not take the position at trial that The Anarchist's Cookbook could be introduced as intrinsic evidence. "Intrinsic evidence does not implicate Rule 404(b), and 'consideration of its admissibility pursuant to Rule 404(b) is unnecessary.'"  Coleman, 78 F.3d at 156 (quoting United States v. Garcia, 27 F.3d 1009, 1014 (5th Cir. 1994)).  Evidence qualifies as intrinsic when it is "inextricably intertwined" with evidence of the crime charged, is a "necessary preliminary" to the crime charged, or both acts are part of a "single criminal episode." United States v. Williams, 900 F.2d 823, 825 (5th Cir. 1990).  Such evidence is admissible to complete the story of the crime by providing the context of events.  Coleman, 78 F.3d at 156; see United States v. Royal, 972 F.2d 643, 647 (5th Cir. 1992) (finding intrinsic evidence admissible so that the factfinder may evaluate all the circumstances under which the defendant acted).  Because the government did not offer the evidence as intrinsic, this court analyzes its admission under Rule 404(b).

12

character.[3]  The only chapter admitted discussed how to assemble components of explosive devices similar to components found in the Lackland bomb.  The chapter discussed how to obtain and handle black powder, which was the explosive used in the bomb.  The chapter also discussed "tamping," a technique for channeling the power of the explosive used, a technique used on the black powder in the Lackland bomb.  The chapter outlined a "booby-trap" triggering mechanism with the same sequence, power sources, conductors, and switches used in the Lackland bomb.  The chapter that the trial court admitted was relevant to show Walters's knowledge and ability to make a bomb using such components. The admission of the title and inside cover page containing Walters's handwritten name were relevant to identify the source of the chapter and its relationship to Walters.  See Coleman, 78 F.3d at 156; Royal, 972 F.2d at 647.

Walters's challenge to relevance based on temporal remoteness fails.  The evidence at trial showed that Walters had been in Utah as recently as three months before the bombing and had visited his mother's home, where the book was found, as recently as March or April of 2000.  The relatively short time between Walters's last visit to the place where the book was found and the date of the

---

[3]  Rule 401 provides, "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  FED. R. EVID. 401.

13

bombing does not diminish the probative value of the evidence.  See

Grimes, 244 F.3d at 385 (holding that a one-year gap between an

extrinsic act and the charged offense does not remove relevance and

stating that a ten-year gap would be too large).

Walters argues that the unduly prejudicial impact of The

Anarchist's Cookbook substantially outweighed its probative value,

in violation of Rule 404(b) and Rule 403.[4]  Walters understates the

probative value of the excerpts admitted and overstates their

prejudicial impact.  The similarity between specific components of

the Lackland bomb and those described in The Anarchist's Cookbook

chapter admitted made the evidence highly probative.  The

government redacted the book to admit relevant portions and placed

no emphasis on the title or the contents unrelated to the

components similar to the bomb at issue.  The district court gave

the jury a limiting instruction governing its consideration of this

evidence.  The instruction told the jurors that they could consider

the evidence "only for the limited purpose of determining the

identity of the defendant as the person who constructed the

destructive device used to commit the crimes alleged in the

indictment, or for the limited purpose of deciding whether the

defendant acted in preparation for constructing the destructive

_____

[4]  Rule 403 provides that "[a]lthough relevant, evidence may
be excluded if its probative value is substantially outweighed by
the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue delay, waste of
time, or needless presentation of cumulative evidence."  FED. R.
EVID. 403.

device used to commit the crimes alleged in the indictment, or for the limited purpose of deciding whether the defendant had the knowledge to construct the destructive device used to commit the crimes alleged in the indictment." Given the redaction of irrelevant portions of the Cookbook, the absence of any effort by the prosecutor to emphasize the title or create an unduly prejudicial impact, and the judge's instruction limiting the jury's use of the evidence, this court concludes that admission was proper under Rule 404(b). See United States v. Gonzalez, 328 F.3d 755, 760 n. 2 (5th Cir. 2003) (a limiting instruction mitigates potential prejudicial effect).[5]

Walters is not the first defendant found in possession of The Anarchist's Cookbook or similar "how-to" manuals to challenge their admission under Rule 404(b). In United States v. Rogers, 270 F.3d 1076 (7th Cir. 2001), the defendant was charged with possession of an unregistered firearm after agents discovered a homemade silencer for a semiautomatic pistol in his garage. Id. at 1077. At trial,

---

[5] The fact that the district court's limiting instruction did not specifically mention the Cookbook does not diminish its mitigation of prejudicial effect. See, e.g., United States v. Paul, 142 F.3d 836, 844 (5th Cir. 1998) (a general limiting instruction is sufficient to dispel prejudice). The trial judge's instruction at the conclusion of trial was sufficient. United States v. Peterson, 244 F.3d 385, 394 (5th Cir. 2001); see also United States v. Cihak, 137 F.3d 252, 258 & n. 3 (5th Cir. 1998) (limiting instruction presumably given at conclusion of trial cured prejudice from admitted 404(b) evidence); United States v. Holley, 23 F.3d 902, 912 (5th Cir. 1994) ("[R]epetition is not a requirement of a definite cautionary instruction.").

15

the defendant contended that he thought the device was an "extension" of the pistol and had no idea that it functioned as a silencer. Id. at 1081. The district court admitted the entirety of The Anarchist's Cookbook into evidence. The prosecutor treated the title as significant and read to the jury not only the parts about building silencers, but other portions as well. Id. The appellate court found error in "some respects." Id. Although portions of the Cookbook were relevant, the trial court should have limited the portions admitted to those pertinent to the charged offense. Id. The appellate court nonetheless affirmed the conviction because of the weight of the evidence against the defendant, noting that "[t]here is no problem . . . in presenting to the jury written material in the defendant's possession that shows how to commit the crime, for this makes it more likely that the defendant rather than someone else was culpable." Id.

In United States v. Ellis, 147 F.3d 1131 (9th Cir. 1998), the defendant was charged with illegally possessing stolen explosives. Id. at 1133. The government introduced The Anarchist's Cookbook based on evidence that the defendant had borrowed it a month before the explosives were reported stolen. Id. at 1134. The district court admitted the entire Cookbook into evidence. On appeal, the court found error because "prejudicial books and manuals . . . are normally inadmissible when they are 'entirely unnecessary to support the charge. . . .'" Id. at 1135 (internal citation

16

omitted).  Intent was not an element of the possession offense charged in Ellis, making the Cookbook unnecessary to support the charge.  The prejudicial impact of the introduction of a "revolutionary" text and the absence of any probative value made admission erroneous under Rule 404(b).  Id. at 1135-36.

In the present case, in contrast to Ellis, intent is an element of the offenses charged.[6]  In the present case, in contrast to Rogers, the trial court limited the Cookbook portions admitted, allowing the jury to see only the chapter containing the description of building explosives with features similar to the bomb Walters allegedly assembled.  The portions of the Cookbook pertinent to making a bomb with features similar to the one that exploded at the base were relevant to show Walters's knowledge and ability to make such a device.  See United States v. Stotts, 176 F.3d 880, 890-91 (6th Cir. 1999) (bomb-making books in defendant's residence admitted to show that an explosion at a suspected methamphetamine lab was from a device intended to be destructive and not merely an accidental result of chemicals combining); United States v. Salameh, 152 F.3d 88, 111 (2d Cir. 1998) (possession of

---

[6]  See United States v. Moore, 997 F.2d 30, 35 n. 8 (5th Cir. 1993) (assault on a federal officer with a deadly weapon); United States v. McKinnon, 2003 WL 22079497, *2 (N.D. Ca. 2003) (damaging a federal building with explosives); Coleman, 78 F.3d at 157 n. 1 (quoting United States v. Harris, 25 F.3d 1275, 1278 (5th Cir. 1994)) (use of a firearm during a crime of violence); United States v. Price, 877 F.2d 334, 338 (5th Cir. 1989) (possession of an unregistered firearm).

17

documents detailing how to construct bombs provided circumstantial proof of "familiarity with bomb making and the use of explosives" and had probative value in light of the similarity to the actual bomb); United States v. Ford, 22 F.3d 374, 381 (1st Cir. 1994) (book seized from drug defendant's home entitled "Secrets of Methamphetamine Manufacture" properly admitted to show that the defendant was a drug dealer as opposed to someone who possessed drugs for personal use).  The careful approach in this case distinguishes it from Rogers, in which the prosecutor treated the title, The Anarchist's Cookbook, as significant and read to the jury portions of the book in addition to those relating to the charged offenses.  See Rogers, 270 F.3d at 1081 (warning that admission should be limited to those portions of the book relevant to the charge and the prosecutor may not suggest that a defendant should be convicted because he owned such seditious literature); see also Grimes, 244 F.3d at 385 (suggesting that the government redact narratives describing crimes of a different nature than those charged).

In addition, the weight of the evidence against Walters prevents him from demonstrating prejudice. See Rogers, 270 F.3d at 1081 (affirming conviction despite certain errors in the introduction and use of The Anarchist's Cookbook at trial, based on the weight of the evidence against the defendant).  Walters had a history of education and training in bomb making and repeatedly

expressed animosity toward the bomb victim. After the bombing, agents found in Walters's room a number of components also found in the exploded bomb. The amount and strength of the evidence against Walters does not support reversal based on the admission of the Cookbook.

**B.    The Timing of the Government's Disclosure**

Walters contends that the government's delay in disclosing the identity of Bott, another possible suspect, until approximately one month before trial violated Brady v. Maryland, 373 U.S. 83 (1963). Walters urges reversal on the ground that the court abused its discretion in refusing to grant Walters a continuance to investigate this evidence. Under Brady v. Maryland, the government must disclose material, exculpatory evidence to a defendant. Id. at 87. To establish a Brady violation, a defendant must show that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the petitioner; (3) the evidence was material either to guilt or punishment; and (4) nondiscovery of the allegedly favorable evidence was not the result of a lack of due diligence. Graves v. Cockrell, 343 F.3d 465, 475 (5th Cir. 2003).

The record does not support Walters's contention of a Brady violation. The government disclosed the evidence nearly four weeks before trial. See Lawrence v. Lensing, 42 F.3d 255, 257 (5th Cir. 1994) ("Because we find that the existence and contents of the [evidence] were disclosed at trial, we hold that the prosecution

19

did not suppress any evidence."); <u>United States v. McKinney</u>, 758 F.2d 1036, 1049-50 (5th Cir. 1985) (holding same).  The complaint that the government had the information for some time before disclosing it to Walters does not, in itself, show a <u>Brady</u> violation.  "If the defendant received the material in time to put it to effective use at trial, his conviction should not be reversed simply because it was not disclosed as early as it might have and, indeed, should have been."  <u>McKinney,</u> 758 F.2d at 1050.  Walters had almost a month after the government disclosed the information about Bott to investigate and put it to "effective use" at trial. At trial, defense counsel was able to put evidence before the jury that other students had made threats about bombs or violence at the Lackland base.  <u>See</u> <u>United States v. O'Keefe,</u> 128 F.3d 885, 898-99 (5th Cir. 1997) (holding that the disclosure of reports after cross-examination had begun did not violate <u>Brady</u> where the defense was able to review the reports for a few days and use them to conduct an effective cross-examination); <u>United States v. Randall</u>, 887 F.2d 1262, 1269 (5th Cir. 1989) (holding that the government's disclosure of a witness's drug addiction during trial did not violate <u>Brady</u> due process where the defendant had ample time to cross-examine the witness on the issue); <u>McKinney</u>, 758 F.2d at 1050 (finding no <u>Brady</u> violation where the defendant was able to use documents disclosed during trial in an effective cross-examination); <u>United States v. Anderson</u>, 574 F.2d 1347, 1352 (5th

20

Cir. 1978) (finding the disclosure of exculpatory grand jury testimony during trial was timely provided under Brady).

The record also fails to demonstrate that the information the government allegedly delayed in disclosing was material, as Brady requires. "[E]vidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Strickler v. Greene, 527 U.S. 263, 280 (1999) (quoting Kyles v. Whitley, 514 U.S. 419, 433-34 (1995)). In light of the fact that Bott denied making the statement attributed to him and left the state before the bombing occurred, the record does not support Walters's argument that the information the government disclosed about Bott was material. See Graves, 343 F.3d at 476 (quoting United States v. Agurs, 427 U.S. 97, 109-110 (1976)) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense.").

Walters also argues that the district court erred by refusing to grant a continuance to enable him further to investigate Bott as a "viable suspect." A trial court's decision to grant or deny a continuance is reviewed for abuse of discretion. United States v. Hopkins, 916 F.2d 207, 217 (5th Cir. 1990). In reviewing the denial of a continuance, this court looks to the "totality of the

21

circumstances," including (a) the amount of time available; (b) the defendant's role in shortening the time needed; (c) the likelihood of prejudice from denial; (d) the availability of discovery from the prosecution; (e) the complexity of the case; (f) the adequacy of the defense actually provided at trial; and (g) the experience of the attorney with the accused. Id.; United States v. McDonald, 837 F.2d 1287, 1289 (5th Cir. 1988). Walters had previously requested, and been granted, two continuances. Walters's defense team, which included the resources of three attorneys and a hired investigator, had nearly four weeks after the government disclosed the information at issue to contact, interview, or subpoena Bott at the address and telephone number the government provided. Walters has not shown why he was unable to do so, nor argued that Bott was unavailable. See United States v. Olaniyi-Oke, 199 F.3d 767, 771 (5th Cir. 1999) (requiring a party requesting a continuance based on the unavailability of a witness to demonstrate (1) the exercise of due diligence to obtain the witness's attendance; (2) that the witness would tender substantial favorable evidence; (3) that the witness will be available and willing to testify; and (4) that denial would materially prejudice the movant). The prosecution provided Walters with Bott's identity, contact information, travel movements, and statements about his presence at Lackland. Walters's counsel presented an effective defense, eliciting admissions from government witnesses that other students had

22

threatened violent acts at the Air Force base.  With a cushion of nearly four weeks and little new information available, Walters has not demonstrated a likelihood of prejudice from the denial of the continuance.  See Hopkins, 916 F.2d at 218 (finding no prejudice from the denial of continuance to obtain documents where the document's contents were either previously known, available from other sources, or cumulative).  No abuse of discretion is shown on this record.  See United States v. Kelly, 973 F.2d 1145, 1148-49 (5th Cir. 1992) (finding no abuse of discretion in denial of continuance under similar circumstances).  Neither the timing of the government's disclosure of the information about Bott, nor the trial court's denial of a continuance after the disclosure, supports reversal.

## C.    The Multiple Convictions under Section 924(c)(1)

Walters challenges his convictions on two counts charging violations of 18 U.S.C. § 924(c)(1),[7] which resulted in a mandatory

---

[7]  Section 924(c)(1) provides in relevant part:

> (A)  [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime . . . (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.
> (B)  If the firearm possessed by a person convicted of a violation of this subsection- . . .
> (ii) is a machinegun or a destructive device,

23

life sentence, as an improper application of the statute. Although both offenses occurred simultaneously with the single explosion of a single bomb, Count Two of the government's indictment charged Walters with the use of the bomb to assault a federal officer, while Count Four charged him with the use of the same bomb to damage a federal building. The district court, in accordance with section 924(c)(1)(B)(ii), sentenced Walters to 360 months under Count Two. Following that conviction, and in accordance with section 924(c)(1)(C)(ii), the court sentenced Walters to life imprisonment under Count Four (as a second conviction subsequent to the Count Two conviction for use of the bomb). Walters primarily relies on United States v. Phipps, 319 F.3d 177 (5th Cir. 2003), in which this court held that section 924(c)(1) "does not authorize multiple convictions for a single use of a single firearm based on multiple predicate offenses." Id. at 183. Walters contends that because the charged offenses involved only a single use of a single destructive device, only one of the section 924(c)(1) counts of conviction can stand. The government attempts to limit Phipps to

----

> or is equipped with a firearm silencer or firearm muffler, the person shall be sentenced to a term of imprisonment of not less than 30 years.
>
> (C) In the case of a second or subsequent conviction under this subsection, the person shall- . . .
>
> (ii) if the firearm involved is a machine gun or destructive device, or is equipped with a firearm silencer or firearm muffler, be sentenced to imprisonment for life.

its facts and urges the application of <u>United States v. Salameh</u>, 261 F.3d 271, 279 (2d Cir. 2001), in which the Second Circuit permitted convictions for two counts under section 924(c)(1), one alleging the transportation and one alleging the use and carrying of a bomb set off in the World Trade Center in 1993.

In <u>Phipps</u>, the defendants abducted a woman in her car at gunpoint, gave the gun to an accomplice, and drove off.  They repeatedly raped the victim before she escaped.  319 F.3d at 180-81.  Defendants were convicted of kidnapping and carjacking.  The jury also convicted the defendants for two counts under section 924(c)(1), one charging use of a firearm during and in relation to the kidnapping and one charging use of a firearm during and in relation to the carjacking.  <u>Id.</u> at 181.  On appeal, defendants urged that they could not be convicted twice under section 924(c)(1) for a single use of a single firearm, despite their convictions for two predicate offenses.  The court began the analysis with the statutory language defining the "unit of prosecution" under section 924(c)(1), holding that it criminalized the "use, carriage, or possession of a firearm during and in relation to a predicate offense."  <u>Id.</u> at 186.  The court concluded that the statute did not unambiguously authorize multiple convictions for a single use of a single firearm during and in relation to multiple predicate offenses.  The court instead concluded that the "language allows for only as many counts as

25

there are uses of the firearm." Id. at 186. The court reasoned that although the defendants had committed two crimes (kidnapping and carjacking), they used the gun only once – in "put[ting] the firearm to [the victim's] head" – and could be convicted of only a single section 924(c)(1) violation. Id.

The Phipps court analyzed two earlier cases holding that section 924(c)(1) does not authorize multiple convictions for a single use of a single firearm based on multiple predicate offenses. In United States v. Wilson, 160 F.3d 732 (D.C. Cir. 1998), the court held that a defendant convicted of first degree murder and killing a witness, in violation of 18 U.S.C. § 1512, could be convicted of only a single violation of section 924(c)(1) because the defendant used a firearm only once. Id. at 749. The Second Circuit reached a similar conclusion in United States v. Finley, 245 F.3d 199 (2d Cir. 2001). The Finley defendant was convicted of both drug distribution and drug possession with intent to distribute after an undercover officer purchased drugs from the defendant and found additional drugs in a subsequent search of the defendant's home. Id. at 202. The officer also found a gun in the home. Id. The defendant was charged with and convicted of one count for using or carrying a firearm during and in relation to drug possession and one count for using or carrying a firearm during and in relation to drug distribution. Id. at 201. Agreeing with "the widely-shared view that [section 924(c)]'s text is

26

ambiguous," the Second Circuit reversed the defendant's second conviction under the statute. Id. at 208. The court reasoned that "[t]he statute does not clearly manifest an intention to punish a defendant twice for continuous possession of a firearm in furtherance of simultaneous predicate offenses consisting of virtually the same conduct." Id. at 207.

In Salameh, however, the Second Circuit considered and rejected a similar challenge to two section 924(c)(1) convictions, one for the use or carriage of a firearm in relation to the underlying offense of assaulting a federal officer, and one for the use or carriage of a firearm in relation to the underlying offense of conspiracy to bomb buildings and property and to transport explosives in interstate commerce. 261 F.3d at 277. In finding that the defendants' section 924(c) convictions did not rest on a single use of a single explosive device, the court emphasized two facts. First, the indictment charged separate uses of the explosive device: transportation of the bomb from one state to another and use of the bomb by detonating it in the World Trade Center. Id. at 279. These separate uses distinguished Wilson and Finley, in which the defendants were charged with only a single use of a single firearm. Id. The Salameh court expressly noted that "we are not here faced with a situation in which defendants' § 924(c) convictions rest on a single 'use' of the firearm in question." Id. Second, Congress had separately criminalized

27

transportation of a bomb, making it an offense independent of a later detonation. Id.; see 18 U.S.C. § 844(d). "Given the separate, and separately culpable, nature of defendants' use and carriage of the bomb," the multiple convictions under section 924(c)(1) could stand. Id.

In the present case, in contrast to Salameh, the jury did not have to find that Walters both transported and used the bomb to convict him of the predicate offenses charged in the indictment. In contrast to the indictment in Salameh, the government did not charge Walters with separate offenses consisting of different actions relating to the bomb. Unlike Salameh, the government did not allege transportation of the explosive device as a "separate, and separately culpable" offense from the use of the device. Like the Phipps, Wilson, and Finley defendants, Walters used a single explosive device on a single occasion, during and in relation to the separate predicate offenses of assaulting a federal officer and damaging a federal building. Under the binding precedent of Phipps, Walters can be convicted of only a single section 924(c)(1) conviction for his single use of the single bomb. Phipps, 319 F.3d at 183; see Finley, 245 F.3d at 207; Wilson, 160 F.3d at 749.

The government argues that Phipps is distinguishable because of the "unusual fact that defendants gave the firearm to [the accomplice] immediately after using it." Id. at 188. The government argues that this "voluntary restriction" on defendants'

28

use of the firearm made <u>Phipps</u> unique.  In that case, the voluntary transfer of the firearm at an early point in the defendants' criminal rampage was important because it limited how they "used" the firearm under section 924(c)(1).  That limit precluded a sentence based on two convictions under section 924(c)(1), despite the fact that the defendants accomplished dual criminal purposes, carjacking and kidnaping.  Similarly, the fact that Walters used a single bomb on a single occasion precludes sentencing based on two counts of conviction under section 924(c)(1), despite the fact that Walters accomplished the dual criminal purposes of assaulting a federal officer and damaging a federal building.

In <u>Phipps</u>, the court held that "'[t]he proper remedy for multiplication of punishment is to vacate the sentences on all the counts and remand for resentencing with instructions that the count elected by the government be dismissed.  The defendant[s are] then to be resentenced.'"  <u>Phipps</u>, 319 F.3d at 189 (quoting <u>United States v. Privette</u>, 947 F.2d 1259, 1263 (5th Cir. 1991)).  This court vacates the sentences for the two 924(c)(1) counts and remands for resentencing, with instructions that after the government chooses which of the section 924(c)(1) counts to dismiss, either Count Two or Count Four, the district court will resentence Walters on the remaining section 924(c)(1) count.

### III. Conclusion

The challenges to the convictions based on the district court's

29

evidentiary rulings and denial of a continuance are without merit. Because this circuit has recently held that punishment cannot be based on multiple section 924(c)(1) convictions for a single use of a single firearm to accomplish multiple predicate offenses, this court VACATES the section 924(c)(1) sentences and REMANDS for resentencing consistent with this opinion.